IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| THADDIUS A. JOHNSON and ANDREA E. JOHNSON,<br><br>                     Plaintiffs,<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, successor by merger to BUFFALO PUMPS, INC., AURORA PUMP COMPANY, BW/IP INTERNATIONAL, INC., f/k/a Byron Jackson Pump Division, Individually and as successor-in-interest to BYRON JACKSON PUMPS, CRANE CO., FLOWSERVE US, INC., Individually and as successor in interest to EDWARDS VALVES and ROCKWELL EDWARD VALVES, GARDNER DENVER, INC., GOULDS PUMPS LLC, GRINNELL LLC, IMO INDUSTRIES, INC., As successor in interest to DELAVAL PUMPS, J. HENRY HOLLAND CORPORATION, J. R. CLARKSON COMPANY LLC, individually and as successor by mergers to KUNKLE INDUSTRIES, INC., JOHN CRANE, INC., NASH ENGINEERING COMPANY, SB DECKING CO., INC. a/k/a SELBY BATTERSBY, THE WILLIAM POWELL COMPANY, UNION CARBIDE CORPORATION, a subsidiary of The Dow Chemical Company, VIKING PUMP, INC., WACO, INC., WARREN PUMPS LLC,<br><br>                     Defendants. | Civil Action No.  4:18cv132 |

**DEFENDANT JOHN CRANE INC.'S**
<u>**NOTICE OF REMOVAL**</u>

PLEASE TAKE NOTICE that Defendant John Crane Inc. ("JCI"), by counsel and pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, hereby removes the above-captioned action from the Circuit Court for the City of Newport News, Virginia to the United States District Court for the Eastern District of Virginia.  JCI provides the following short and plain statement of the grounds for removal:

## BACKGROUND

1. On September 7, 2018, Plaintiffs Thaddius and Andrea Johnson ("Plaintiffs") filed a complaint, captioned *Johnson, et al. v. Air & Liquid Systems Corporation, et al.*, in the Circuit Court for the City of Newport News, Virginia, Case No. CL 1803189B-04, against JCI and eighteen other Defendants, a true copy of which is attached as **Exhibit A**.

2. JCI's agent for service of process was personally served with the Summons and Complaint on September 21, 2018.  True and correct copies of the summons and service of process transmittal with respect to JCI are attached collectively as **Exhibit B.**

3. JCI filed its Demurrer, Answer and Affirmative Defenses to Plaintiffs' Complaint on October 9, 2018.  A true and correct copy of JCI's pleading is attached as **Exhibit C.**

4. Brought by reference to the general maritime law and the "Saving to Suitors" Clause of 28 U.S.C. § 1333, Plaintiffs' Complaint alleges Mr. Johnson developed mesothelioma from asbestos exposure while employed (among other places) as a pipefitter apprentice, pipefitter, instructor and nuclear mechanical systems inspector and supervisor at the Norfolk Naval Shipyard from 1974 to 1985.  (*See* Compl. at ¶¶ 5-7.) With respect to JCI, Plaintiffs allege Mr. Johnson was exposed to asbestos fibers from asbestos-containing gaskets and packing products made and/or sold to the United States Navy. (*Id.* at ¶¶ 5-7, 11(l).)

5. Asserting claims for strict liability, negligence, and breach of implied warranty of merchantability, Plaintiffs' Complaint alleges that each cause of action is based on "Defendants' failure to warn[.]" *Id.* at ¶ 10. The Complaint – set forth specifically under the negligence count and incorporated by reference in the other two – specifically alleges that JCI (among others) "failed to place any warnings or adequate and sufficient warnings … in the written materials submitted with the products," (*id.* at ¶ 14(b)(5)), or to "suitably and adequately apprise Plaintiff in any other way" of the alleged dangers from working with. (*Id.* at ¶¶ 14(b)(4)-(5)).

6. The Complaint does not stop with failure to warn claims. Instead, Plaintiffs further allege in all three counts that JCI was negligent in failing to "adequately test their asbestos-containing products." Specifically, Plaintiffs aver that JCI and others were required to test their respective products "to determine the nature and extent of the risk from the foreseeable use, maintenance, repair and/or removal of their products and the need for warnings and recommended safety instructions …" (*Id.* at ¶ 14(b)(7).)

7. In terms of the "written materials submitted with the products" and Plaintiffs' claim that those accompanying the product should have included an asbestos warning, at all times relevant to Plaintiffs' claims, JCI's compressed asbestos-containing sheet gasket material was sold to the United States Navy in conformance with reasonably precise military specifications covering every aspect of the composition, appearance, technical performance requirements, and testing of the product. Between 1974 and 1975, compressed asbestos-containing sheet gasket material was governed by Federal Specification HH-P-0046D. From 1975 through the time period relevant here, compressed asbestos-sheet gasket material was governed by Federal Specification HH-P-0046E (collectively the "Fed-Specs," attached as **Exhibits D and E**.)  Included in the Fed-Specs are requirements for all writings and markings that are required to appear on the face of the product.

Specifically, Paragraph 3.11, entitled "Identification of Product," provides that the following "shall be on every square foot" of the gasket material supplied to the Navy:

    (i)      The number 2150 or HH-P46;
    (ii)     The manufacturer's name; and
    (iii)    Product identification

(Fed-Specs at ¶ 3.11.) No other writings or markings – including warnings of any kind – were permitted. Consistent with this, JCI never had any product returned by the Navy for failure to include an asbestos warning on the face of the gasket material. Likewise, JCI never received any notice or information from the Navy that the failure to place asbestos warnings on gasket material supplied by JCI to the Navy was in violation of these Fed-Specs.

    8. The Fed-Specs similarly set forth the extensive testing requirements for the product. For example, Paragraph 4.2 of HH-P-0046D required that "[q]ualification tests shall be conducted at a laboratory satisfactory to the Naval Ship Engineering Center," and "shall consist of the tests specified in [paragraph] 4.4." Paragraph 4.4 of HH-P-0046D and its subparts, in turn, required testing to perform a chemical analysis of what was in the product (paragraph 6.3), and to gauge loss of weight on heating, thickness, compressibility and recovery, tensile strength, performance, and oil immersion.

    9. Likewise, HH-P-0046E similarly provided that "[q]ualification tests shall be conducted at a laboratory satisfactory to the Naval Ship Engineering Center," and "shall consist of the examinations of [paragraph] 4.4.3 and the tests specified in [paragraph] 4.4.5." (**Exhibit E** at ¶ 4.3.) The former is a "visual and dimensional examination," while the latter largely mirrors the testing requirements in HH-P-0046D.

    10. In short, nowhere does the qualification testing promulgated by the Navy include a requirement that testing of the sort alleged by Plaintiffs – to determine "the risk from the

foreseeable use" of the products – be done in order to be approved for sale to the Navy for use in advancing its missions. Indeed, there is no evidence that any product was returned to JCI by the Navy for failure to produce such testing.

11. At all times during the relevant time period, JCI complied with the reasonably precise specifications set forth in the Fed-Specs, including the requirement to brand sheet gasket material with its name, brand identification and symbol 2150, and no unauthorized markings or warnings, and complied with the requirement to have its products tested according to the Navy's protocol at facilities approved by the Navy.

12. At all times relevant to Plaintiffs' claims in this lawsuit, the United States Government, including the United States Navy, possessed knowledge regarding the dangers of asbestos that was superior to that of its equipment and product suppliers, including JCI.

## FEDERAL OFFICER REMOVAL IS APPROPRIATE UNDER 28 U.S.C. § 1442(a)(1)

13. As an initial matter, the law governing removal of case for acts done at the direction of federal officers provides that a notice of removal must be filed within 30 days of a defendant's receipt of the initial pleading.

14. This Notice of Removal under 28 U.S.C. § 1442(a)(1), filed within thirty days after JCI was served with the Complaint on September 21, 2018, is hereby timely under 28 U.S.C. § 1446(b)(1). The Complaint seeks to recover for, among other things, JCI's failure to place a warning on the face of the gasket material it supplied. The Complaint seeks to recover from JCI (and others) for JCI's purported failure to test its products. Because both claims fall squarely within the requirements of the Fed-Specs made applicable by the Navy to such products before being sold to the Navy for use in advancing its missions, JCI is entitled to assert the federal officer defense.

15. Removal is proper under 28 U.S.C. 1442(a)(1) when facts are disclosed establishing that: (1) the removing defendant is a person within the meaning of the statute; (2) it performed the complained of action at the direction of a federal officer and under color of federal office; (3) there is a causal nexus between the defendant's actions and the plaintiff's claims; and (4) the defendant asserts a "colorable federal defense." *Mesa v. California*, 489 U.S. 121, 123-35 (1989); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017); *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209-10 (4th Cir. 2016); *Papp v. Fore-Kast Sales, Inc.*, 842 F.3d 805, 812 (3d Cir. 2016); 28 U.S.C. § 1442(a)(1). All elements are present here.

16. *First*, as a corporation, JCI is a "person" for purposes of 28 U.S.C. § 1442(a)(1). *Papp*, 842 F.3d at 812; *Ruppel v. CBS Corp.*, 701 F. 3d 1176, 1181 (7th Cir. 2012); *Isaacson v. Dow Chem. Co.*, 517 F. 3d 129, 135-36 (2d Cir. 2008); *Winters v. Diamond Shamrock Chem. Co.*, 149 F. 3d 387, 398 (5th Cir. 1998), *cert. denied*, 526 U.S. 1034 (1999).

17. *Second*, JCI supplied sheet gasket material at the direction of a federal officer, the United States Government, and under color of federal office. The gasket material at issue was supplied pursuant to military procurement contracts with the United States Government and in compliance with detailed design, labeling, and testing specifications issued and/or approved by the Government. These specifications dictated the performance and material composition of sheet gasket material – including the requirement that such material contain not less than 70% by weight of chrysotile asbestos fiber" (Fed-Specs at ¶ 3.2.1, 3.4) – and the writings and markings required to be placed on the material. As set forth in paragraphs 8 and nine above, the specifications further set forth in detail the testing requirements that the sheet gasket material must be subjected to and pass in order to be approved by the U.S. Navy.

18. The design, manufacture, labeling, testing, and shipment of such material were subject to close, detailed, and ongoing supervision and control of the United States Government and its officers. The Government exercised discretion and approval authority over the products supplied by JCI; JCI complied with the United States Government's specifications, including the writings and markings placed on the face of the gasket material and the testing required by the U.S. government; and, to the extent of any alleged hazards associated with the gasket material, there were no dangers known to JCI that were not known to the United States. *See Sawyer*, 860 F.3d at 255; *Papp*, 842 F.3d at 813; *Getz v. Boeing Co.*, 654 F.3d 852, 866 (9th Cir. 2011); *Winters*, 149 F.3d at 400.

19. JCI's supply of gasket material under the control, direction, specification, and supervision of the Government thus satisfies the "acting under" requirement. The "acting under" requirement, like federal officer removal generally, "is 'broad' and is to be 'liberally construe[d]' in favor of the entity seeking removal.'" *Sawyer*, 860 F.3d at 255 (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007)). Numerous federal courts have held, for purposes of federal officer removal, that military contractors were "acting under a federal officer" in relation to the design, manufacture, and supply of equipment to the United States Government. *See, e.g.*, *Papp*, 842 F.3d at 813 (stating that Boeing "easily satisfie[d] the 'acting under' requirement" where plaintiff's allegations were "directed at actions Boeing took while working under a federal contract to produce an item the Government needed, to wit, a military aircraft, and that the Government otherwise would have been forced to produce on its own"); *Durham*, 445 F.3d at 1251; *Ruppel*, 701 F.3d at 1181; *Hagen*, 739 F. Supp. 2d at 784.

20. Indeed, JCI could not change the design or provide additional language – including warning labels – on the gaskets without prior Government authorization. Moreover, not only did

7

JCI's acquisition of Government approval for any design change require strict compliance with the Government's formal, detailed change process procedures, the Government retained absolute authority at all times to accept, reject, or modify any aspect of a military government contractor's requested change proposal. Similarly, JCI could not change the testing protocol that the gasket material was subjected to because, pursuant to the clear language of the Fed-Specs, the testing was to be conducted in facilities approved by the Government and done in accordance with the Government's protocol. Numerous courts have looked to such testing requirements in finding that the "acting under" requirement was satisfied. *See, e.g., Mitchell v. Ac&S, Inc*., Civil Action No. 4:04cv2713, 2004 U.S. Dist. LEXIS 29504, at *6 (E.D. Va. Dec. 15, 2004) ("These turbines were subjected to tests and trials, all under the supervision of United States Navy officers, prior to being approved for use on military vessels."); *Pack v. AC & S*, 838 F. Supp. 1099, 1103 (D. Md. 1993) ("Officers of the Navy and Maritime Commission had extensive control over the construction, design and testing of the turbines. Indeed, the government would specify and approve the type of asbestos cloth to be used when insulating valves and flanges").

21. *Third*, there is a causal nexus between JCI's alleged actions in supplying the gaskets and Plaintiffs' alleged injury in that Mr. Johnson claims that his mesothelioma was caused by JCI's alleged failure to test and/or warn of the potential hazards of asbestos-containing gaskets. To meet this requirement, "there need be only 'a connection or association between the act in question and the federal office.'" *Sawyer*, 860 F.3d at 258 (quoting *Papp*, 842 F.3d at 813) (emphasis added in *Sawyer*). If a defendant is sued for asbestos-related injuries purportedly arising from or relating to equipment that it supplied to the United States Government under the Government's detailed direction and control, that defendant has been sued in relation to conduct under color of its federal office, satisfying the "causal nexus" requirement. *See Cuomo v. Crane Co.*, 771 F.3d 113, 117 (2d

8

Cir. 2014); *Ruppel*, 701 F.3d 1181; *Carter v. Acands, Inc.*, No. 3:02CV00009, 2002 U.S. Dist. LEXIS 24057, at *15 (E.D. Tex. June 26, 2002) (holding Navy control from "design to testing to installation" was evidence of causal nexus).

22. *Fourth*, JCI asserts a colorable federal defense, namely the "government contractor" defense set forth in *Boyle v. United Technologies, Inc.*, 487 U.S. 500 (1988) and its progeny. Under *Boyle*, a defendant must show that: (1) it designed, manufactured, and supplied the product at issue (including accompanying markings and manuals) according to "reasonably precise specifications" promulgated or adopted by the United States Government; (2) the equipment, markings, and manuals conformed with those specifications; and (3) at all relevant times, the United States Government had as much knowledge of the potential hazard as the defendant. 487 U.S. at 512; *accord Sawyer*, 860 F.3d at 255-56; *Ripley*, 841 F.3d at 210.

23. To assert a colorable defense, a defendant is required only to identify facts which, viewed in the light most favorable to the defendant, would establish a defense under *Boyle* at trial, and "'need not win his case before he can have it removed.'" *Papp*, 842 F.3d at 815 (quoting *Willingham v. Morgan*, 395 U.S. 402, 407(1969)). *Accord Rhodes v. MCIC, Inc.*, 210 F. Supp. 3d 778, 782 (D. Md. 2016). "'Just as requiring a clearly sustainable defense rather than a colorable defense would defeat the purpose of the removal statute, so would demanding an airtight case on the merits in order to show the required causal connection.'" *Sawyer*, 860 F.3d at 258 (quoting *Jefferson County v. Acker*, 527 U.S. 423, 432 (1999)). Under identified facts similar to those here, federal courts consistently have denied motions to remand state law claims removed under the government contractor defense. *See, e.g.*, *Sawyer*, 860 F.3d at 259 (reversing district court's remand); *Ripley*, 841 F.3d at 211 (same); *Rhodes*, 210 F. Supp. 3d at 786; *Citrano v. John Crane-Houdaille, Inc.*, 1 F. Supp. 3d 459 (E.D. Va. 2014); *Mitchell*, 2004 U.S. Dist. LEXIS 29504, at

*14 (denying motion to remand); *Pack*, 838 F. Supp. at 1104 (same); *See also Emory v. McDonnell Douglas Corp.*, 148 F.3d 347, 353 (4th Cir. 1998) (affirming summary judgment for defendant on government contractor defense); *Kleeman v. McDonnell Douglas Corp.*, 890 F.2d 698, 704 (4th Cir. 1989) (same).

24. The government contractor defense applies to Plaintiffs' failure-to-warn/failure-to-test claims in that: (1) the Government approved specifications for gaskets; (2) JCI complied with these specifications, including the brandings on the face of the sheet gasket material and the testing protocol, and (3) there were no health hazards associated with asbestos generally, or asbestos-containing sheet gasket material specifically, of which JCI was aware and the Government was not. *Sawyer*, 860 F.3d at 256. As recognized by the Fourth Circuit, "the rationales identified in *Boyle* remain applicable in failure to warn cases." *Ripley*, 841 F.3d at 211 (holding that government contractor defense is available in failure to warn cases). *See also Emory v. McDonnell Douglas Corp.*, 148 F.3d 347, 350 (4th Cir. 1998) (stating that decisions applying government contractor defense in failure to warn cases were "reasoned soundly"). In addition to the Fourth Circuit, the Second, Third, Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits also have all applied *Boyle*'s government contractor defense in failure-to-warn cases. *Papp*, 842 F.3d at 814 & n.6 (collecting cases).

25. The government contractor defense is satisfied here because: (1) the design specifications, including all writings and markings on the sheet gasket material, and the testing specifications, which were promulgated by the U.S. government and utilized during tests at facilities approved by Bureau of Ships, were issued and/or approved by the Government; (2) the gaskets did, in fact, conform to those specifications and passed the required tests; and (3) to the extent that asbestos was believed, at the time, to be a hazardous material, the Government's knowledge of such hazards

was at all times superior to that of JCI.  *See Citrano*, 1 F. Supp. 3d at 467-69; *Hicks v. Boeing*, 2014 WL 1051748 (D. Del. Mar. 17, 2014); *Fung v. Abex Corp.*, 816 F. Supp. 569, 573 (N.D. Cal. 1992); *Mitchell*, 2004 U.S. Dist. LEXIS 29504, at *12-13; *Kerstetter v. Pac. Sci. C*o., 210 F.3d 431, 435-36 (5th Cir. 2000) ("Extensive government involvement in the design, review, development and testing of a product, as well as extensive acceptance and use of the product following production, is evidence that the product line generally conformed with the government-approved specifications").

26. Moreover, the government contractor defense need apply to only one of the claims in a complaint to allow removal of the entire case under the federal officer removal statute.  *Sawyer*, 860 F.3d at 257.

27. JCI also is entitled to federal officer removal under 28 U.S.C. § 1442(a)(1) based on the separate defense of derivative sovereign immunity set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 40 (1940).  In *Yearsley*, the Court established that a government contractor acting at the direction and authorization of a government officer is immune from suit based on performance of the government contract.  *Yearsley* is satisfied here because the acts complained of were performed at the direction of government officers acting under government authorization, and if the Government had performed those acts directly, it would be immune from suit.

## **JURISDICTION**

28. Removal of this action is proper under 28 U.S.C. §§1331, 1442.  Consistent with the short and plain statement of the law and facts set forth above, the federal district courts have original jurisdiction over the subject matter of this suit under 28 U.S.C. § 1442(a)(1), because JCI was acting under an officer or agency of the United States Government in relation to any claims

asserted against JCI and JCI can state at least a colorable defense under federal law to any such claims. *See Sawyer*, 860 F.3d at 254; *Papp*, 842 F.3d at 812-15; *Ruppel*, 701 F.3d at 1179-86.

29. "'Unlike the general removal statute, the federal officer removal statute is to be 'broadly construed' in favor of a federal forum.'" *Papp*, 842 F.3d at 811 (quoting *Defender Ass'n*, 790 F.3d at 466-67); *see also Willingham*, 395 U.S. at 406 (noting that scope of federal officer removal statute "is not narrow or limited").

## PROCEDURAL COMPLIANCE

30. Written notice of the filing of this Notice of Removal is being given promptly to Plaintiffs by service hereof, and a copy of the Notice of Removal is being filed promptly with the Virginia Circuit Court for the City of Newport News, as required by 28 U.S.C. § 1446(d). A copy of the notice provided to the state court (without exhibits) is attached as **Exhibit F.**

31. Because JCI satisfies the requirements for removal under 28 U.S.C. § 1442(a)(1), it is entitled to remove this action without obtaining the consent of other Defendants. *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998).

32. As required by 28 U.S.C. § 1446(a), true and correct copies of the process and pleadings served upon JCI are being filed with this Notice of Removal as **Exhibit G.**

33. A court cannot remand a properly removed case for discretionary or policy reasons, such as allegedly related state court cases or a contention that judicial economy compels remand. 28 U.S.C. § 1447(c); *Thermitron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336 (1976). The federal officer removal statute, 28 U.S.C. § 1442(a)(1), is not narrow or limited, and it should not be frustrated by a narrow or grudging interpretation. *Willingham v. Morgan*, 395 U.S. 402, 405 (1960).

34. Should Plaintiffs move to remand this case, JCI respectfully requests an opportunity to respond more fully in writing, including submission of additional affidavits and authority.

35. JCI reserves all of its defenses.

                               **JOHN CRANE INC.**
                               **Defendant**


                               By:    /s/ Brian J. Schneider_____

Eric G. Reeves (VSB # 38149)
Brian J. Schneider (VSB # 45841)
Mary Louise Roberts (VSB # 34305)
Lisa Moran McMurdo (VSB #44371)
MORAN REEVES & CONN PC
100 Shockoe Slip, 4th Floor
Richmond, Virginia 23219
Telephone:  (804) 421-6250
Facsimile:  (804) 421-6251
ereeves@moranreevesconn.com
bschneider@moranreevesconn.com
mroberts@moranreevesconn.com
lmcmurdo@moranreevesconn.com
*Counsel for John Crane Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of October, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, served by electronic mail (PDF attachment) and by U.S. mail, postage prepaid, to counsel for plaintiff and served upon all other counsel of record via electronic mail (PDF attachment) as follows:

>Robert R. Hatten, Esq.
>Donald N. Patten, Esq.
>Hugh B. McCormick, III, Esq.
>Jennifer W. Stevens, Esq.
>William W.C. Harty, Esq.
>Erin E. Jewell, Esq.
>F. Alex Coletrane, Esq.
>Patten Wornom Hatten & Diamonstein
>12350 Jefferson Ave, Suite 300
>Newport News, Virginia 23602
>*Counsel for Plaintiffs*
>
>Carl Schwertz, Esq.
>Miles & Stockbridge, P.C.
>1751 Pinnacle Drive, Suite 500
>McLean, Virginia 221023833
>*Counsel for Air & Liquid Systems Corporation, BW/IP*
>*International, Inc., Gardner Denver Inc., and SB Decking Co., Inc.*
>
>David C Bowen, Esq.
>Willcox & Savage, P.C.
>440 Monticello Avenue, Suite 2200
>Norfolk, Virginia 23510
>*Counsel for Aurora Pump Company*
>
>Christopher J. Wiemken, Esq.
>Taylor & Walker, P. C.
>555 East Main Street, Suite 1300
>Norfolk, Virginia 23510
>Norfolk, Virginia 23510
>*Counsel for Crane Co.*

Lynn K. Brugh, IV, Esq.
Williams Mullen
Post Office Box 1320
Richmond, VA 232181320
*Counsel for Flowserve US, Inc*

Christopher Popecki, Esq.
Morgan Lewis
1111 Pennsylvania Avenue NW
Washington, DC 20004
*Counsel for Goulds Pumps, Inc. and Grinnell, LLC*

Timothy S. Brunick, Esq.
Clarke, Dolph, Hull & Brunick, PLC
5712 Cleveland Street,
Suite 130
Virginia Beach, Virginia 23462
*Counsel for IMO Industries, Inc. and Warren Pumps, Inc.*

Robert L. O'Donnell, Esq.
Vandeventer Black, LLP
101 W. Main St., Suite 500, 500 World Trade Center
Norfolk, Virginia 23510
*Counsel for J. Henry Holland Corporation*

Joseph Coules, Esq.
Semmes, Bowen & Semmes
1577 Spring Hill Road Suite 200
Vienna, VA 22182
*Counsel for J.R. Clarkson Company*

Albert H. Poole, Esq.
Poole, Brooke & Plumlee, PC
4705 Columbus Street
Virginia Beach, Virginia 23462
*Counsel for The William Powell Company*

James G. Kennedy
Pierce, Herns, Sloan & Wilson, LLC
The Blake House
321 East Bay Street
Charleston, South Carolina 29401
*Counsel for Union Carbide Corporation*

Malcolm S. Brisker, Esq.
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202
*Counsel for Viking Pump Inc.*

Shawn Voyles, Esq.
McKenry, Dancigers & Dawson, PC
192 Ballard Court, Suite 400
Virginia Beach, Virginia 23462
*Counsel for Waco, Inc.*

Eric G. Reeves, Esq.
MORAN REEVES & CONN PC
100 Shockoe Slip, 4th Floor
Richmond, Virginia 23219
*Counsel for Nash Engineering Company*

By: /s/ Brian J. Schneider
Eric G. Reeves (VSB # 38149)
Brian J. Schneider (VSB # 45841)
Mary Louise Roberts (VSB # 34305)
Lisa Moran McMurdo (VSB #44371)
MORAN REEVES & CONN PC
100 Shockoe Slip, 4th Floor
Richmond, Virginia 23219
Telephone: (804) 421-6250
Facsimile: (804) 421-6251
ereeves@moranreevesconn.com
bschneider@moranreevesconn.com
mroberts@moranreevesconn.com
lmcmurdo@moranreevesconn.com