Uploaded: 2018SEP07 15:42 Filed By: BLAYLOCK on behalf of Part #5147 WHARTY Reference EF-12403
E-Filed: 2018SEP07 NEWPORT NEWS CC KLSHAW at 2018SEP10 11:33 CL1803189B-04

Case 4:18-cv-00132-CCB-JCB   Document 1-1   Filed 10/19/18   Page 1 of 27 PageID# 17

VIRGINIA:  IN THE CIRCUIT COURT FOR THE CITY OF NEWPORT NEWS

THADDIUS A. JOHNSON
and ANDREA E. JOHNSON

                Plaintiffs,

v.                                             CIVIL ACTION NO.:

**AIR & LIQUID SYSTEMS CORPORATION,**
**Successor by Merger to BUFFALO PUMPS, INC.**
600 Grant St., Ste. 5085
Pittsburgh, PA  15219
SERVE:      CORPORATION SERVICE COMPANY
               REGISTERED AGENT
               100 Shockoe Slip, 2nd Floor
               Richmond, VA 23219

**AURORA PUMP COMPANY**
13320-A Ballantyne Corporate Place
Charlotte, NC  28277
Attn: Lynette Jones
SERVE:      Secretary of the Commonwealth
               Patrick Henry Building, 4th Floor
               1111 East Broad Street
               Richmond, VA  23219

**BW/IP INTERNATIONAL, INC.** (f/k/a Byron Jackson Pump Division)
Individually and as successor-in-interest to **BYRON JACKSON PUMPS**
5215 N. O'Connor Blvd.
Suite 2300
Irving, Texas  75039
SERVE:      Secretary of the Commonwealth
               9th Street Office Building
               9th and Grace Streets
               Richmond, Virginia 23201

**CRANE CO.**
100 First Stamford Place
Stamford, CT  06902
SERVE:      Secretary of the Commonwealth
               Patrick Henry Building, 4th Floor
               1111 East Broad Street
               Richmond, VA  23219

**EXHIBIT A**

**FLOWSERVE US, INC.**
Individually and as successor in interest to
**EDWARDS VALVES and ROCKWELL EDWARD VALVES**
5215 N. O'Connor Blvd.
Irving, TX  75039
SERVE:          CT CORPORATION SYSTEM
                REGISTERED AGENT
                4701 Cox Road, Suite 285
                Glen Allen, VA 23060

**GARDNER DENVER, INC.**
222 East Erie Street
Milwaukee, WI 53202
SERVE:          CT CORPORATION SYSTEM
                REGISTERED AGENT
                4701 Cox Road, Suite 285
                Glen Allen, Virginia 23060

**GOULDS PUMPS LLC**
240 Fall Street
Seneca Falls, NY  13148
A Delaware Corporation
SERVE:          CT Corporation System
                4701 Cox Road, Suite 285
                Glen Allen, VA 23060

**GRINNELL LLC**
CT Corporation System
116 Pine St., Ste. 320
Harrisburg, PA  17101
SERVE:          Secretary of the Commonwealth
                Patrick Henry Building, 4th Floor
                1111 East Broad Street
                Richmond, VA  23219

**IMO INDUSTRIES, INC.**
**As successor in interest to DELAVAL PUMPS**
200 American Metro Blvd., Ste. 111
Hamilton, NJ  08619
SERVE:          CT CORPORATION SYSTEM
                REGISTERED AGENT
                4701 Cox Road, Suite 285
                Glen Allen, VA 23060

2

**J. HENRY HOLLAND CORPORATION**
5931 Thurston Avenue
Virginia Beach, Virginia 23455
SERVE:      RICHARD S. GUY
            REGISTERED AGENT
            101 W. Main Street
            500 World Trade Center
            Norfolk, Virginia 23510

**J. R. CLARKSON COMPANY LLC**
**Individually and as Successor by mergers to**
**KUNKLE INDUSTRIES, INC.**
The Corporation Trust Company of Nevada
701 S. Carson St., Ste. 300
Carson City, NV  89701
SERVE:      Secretary of the Commonwealth
            Patrick Henry Building, 4th Floor
            1111 East Broad Street
            Richmond, VA  23219

**JOHN CRANE, INC.**
227 West Monroe St., Ste. 1800
Chicago, IL  60606
SERVE:      CT CORPORATION SYSTEM
            REGISTERED AGENT
            4701 Cox Road, Suite 285
            Glen Allen, VA  23060

**NASH ENGINEERING COMPANY**
c/o Mark Nordenson
73 South Street
Freeport, ME  04032
SERVE:      Secretary of the Commonwealth
            Patrick Henry Building, 4th Floor
            1111 East Broad Street
            Richmond, VA  23219

**SB DECKING CO., INC., a/k/a/ SELBY BATTERSBY**
c/o Hecker, Brown, Sherry & Johnson
1700 Two Logan Square
18th and Arch Street
Philadelphia, Pennsylvania 19103
SERVE:      Secretary of the Commonwealth
            Patrick Henry Building, 4th Floor
            1111 East Broad Street
            Richmond, VA  23219

3

**THE WILLIAM POWELL COMPANY**
2503 Spring Grove Avenue
Cincinnati, OH 45214
SERVE: Secretary of the Commonwealth
    Patrick Henry Building, 4th Floor
    1111 East Broad Street
    Richmond, VA 23219

**UNION CARBIDE CORPORATION**
a subsidiary of The Dow Chemical Company
7501 State Highway 185 N
Seadrift, TX 77983
SERVE: CT CORPORATION SYSTEM
    REGISTERED AGENT
    4701 Cox Road, Suite 285
    Glen Allen, Virginia 23060

**VIKING PUMP, INC.**
406 State Street
Cedar Falls, IA 50613
SERVE: Secretary of the Commonwealth
    Patrick Henry Building, 4th Floor
    1111 East Broad Street
    Richmond, VA 23219

**WACO, INC.**
5450 Lewis Road
Sandston, VA 23150
SERVE: DANIEL M. WALKER
    REGISTERED AGENT
    5450 Lewis Road
    Sandston, VA 23150

**WARREN PUMPS LLC**
82 Bridges Ave.
Warren, MA 01083-0969
SERVE: Secretary of the Commonwealth
    Patrick Henry Building, 4th Floor
    1111 East Broad Street
    Richmond, VA 23219

Defendants.

## COMPLAINT

NOW COMES THADDIUS A. JOHNSON and ANDREA E. JOHNSON and allege as follows:

1.     This action is subject to the Standing Orders entered in the Circuit Court for the City of Newport News in regards to asbestos cases filed by the firm of Patten, Wornom, Hatten & Diamonstein, L.C.

2.     As used hereafter, the term "asbestos-containing product" will be used to identify collectively: (i) raw asbestos fiber, (ii) end products directly incorporating asbestos fiber, and (iii) end products manufactured, assembled or supplied by a defendant who has specified and/or required raw asbestos and/or products incorporating asbestos manufactured or supplied by others, to be used, whether internally or externally, in conjunction with the end product for the routine maintenance, repair, and/or proper and intended use and operation of the end product.

3.     As used hereafter, the term "asbestos-containing packing" shall include asbestos-containing sheet packing, gaskets, braided packing, extruded packing, and all other such products designed for use in sealing pipe flanges, valves, pumps, turbines, generators, bulkheads, and for other such applications.

4.     Plaintiff THADDIUS A. JOHNSON was born in 1954.

5.     Plaintiff THADDIUS A. JOHNSON was employed at Huntington Ingalls Incorporated f/k/a Newport News Shipbuilding & Dry Dock Company, Newport New, Virginia from 1972 to 1974 as a pipefitter.  The Plaintiff THADDIUS A. JOHNSON was also employed at Norfolk Naval Shipyard, Portsmouth, Virginia from 1974 to 1985 as a pipefitter apprentice, pipefitter, instructor, and nuclear mechanical systems inspector and supervisor.  As a result of the employment history as set forth above, THADDIUS A. JOHNSON was exposed to asbestos

dust, fibers, and/or particles through the late 1970s.

6.      On or about June 27, 2018, THADDIUS A. JOHNSON was diagnosed with malignant mesothelioma, a terminal cancer caused by his exposure to asbestos dust, fibers and/or particles.

7.      Defendants are corporations, companies or other business entities which, during all times material hereto, and for a long time prior thereto have been, and/or are now engaged, directly or indirectly, in the manufacturing, producing, selling, merchandising, supplying, distributing, and/or otherwise placing in the stream of commerce, asbestos-containing products, including those uniquely and specifically designed for maritime use and marketed for installation aboard ships.  This case arises under the law of Virginia and within the admiralty and maritime jurisdiction pursuant to the "Savings to Suitors" clause of 28 U.S.C. §1333(1) and 46 U.S.C. §30101 and the general admiralty and maritime law of the United States. Courts of the Commonwealth of Virginia have personal jurisdiction over all Defendants.

8.      At all times material hereto, Defendants acted through their agents, servants or employees who were acting within the scope of their employment on Defendants' business.

9.      Plaintiff was exposed to asbestos-containing products that were manufactured, specified, and/or distributed by Defendants.  These asbestos-containing products were defective and inherently dangerous in the manner in which they were marketed for their failure to contain or include adequate warnings regarding potential asbestos health hazards associated with the use, removal or maintenance of, or the exposure to the products.  The defective and inherently dangerous condition of these asbestos-containing products, coupled with the disabling and/or fatal diseases generated by the inhalation of asbestos dust, rendered such asbestos-containing products unreasonably and inherently dangerous and thereby abrogated any need for privity of

6

contract between Plaintiff and these Defendants as a prerequisite to liability.

10.     Defendants' failure to warn renders them liable in negligence (as set forth in Count I), for breach of implied warranty of merchantability (as set forth in Count II), for strict liability in tort (as set forth in Count III), and for spousal pre-death loss of society and consortium (as set forth in Count IV).  Additionally, Plaintiffs expressly disclaim any claim, if any, arising under the Death on the High Seas Act, 46 U.S.C. §30301 et seq.

11.     At all times material hereto:

(a).     Equipment Defendant, AIR & LIQUID SYSTEMS CORPORATION, a Pennsylvania corporation and Successor in Merger to BUFFALO PUMPS, INC., manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, asbestos-containing products including, without limitation, pumps, which incorporated, specified, required, or foreseeably used asbestos-containing packing as defined above. In addition, Defendant also manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, pump repair and/or replacement materials including, without limitation, asbestos-containing products and asbestos-containing packing as defined above. This Defendant also incorporated, specified, required or reasonably foresaw that its equipment would be insulated with asbestos-containing materials on their exterior.

(b).     Equipment Defendant, AURORA PUMP COMPANY manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, asbestos-containing products including, without limitation, pumps, which incorporated, specified, required, or foreseeably used asbestos-containing packing as defined above. In addition, Defendant also manufactured, produced, distributed, sold and/or supplied,

either directly or indirectly, to Plaintiff and/or Plaintiff's employers, pump repair and/or replacement materials including, without limitation, asbestos-containing products and asbestos-containing packing as defined above. This Defendant also incorporated, specified, required or reasonably foresaw that its equipment would be insulated with asbestos-containing materials on their exterior.

(c).    Equipment Defendant, BW/IP International, Inc. (f/k/a Byron Jackson Pump Division), sued individually and as successor-in-interest to BYRON JACKSON PUMPS, supplied, either directly or indirectly, to the Plaintiff and/or Plaintiff's employers, pumps that incorporated internal asbestos-containing component parts, including gaskets and/or valve packing, and that specified, required and/or were foreseeably insulated with asbestos-containing materials on their exterior.

(d).    Equipment Defendant, CRANE CO., a Delaware corporation, manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, asbestos-containing products including, without limitation, insulating products, gaskets, and valves, which incorporated, specified, required, or foreseeably used asbestos-containing packing as defined above. In addition, Defendant also manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, repair and/or replacement kits, sets, or materials including, without limitation, asbestos-containing products and asbestos-containing packing materials as defined above. This Defendant also incorporated, specified, required or reasonably foresaw that its equipment would be insulated with asbestos-containing materials on their exterior.

(e).    Equipment Defendant, FLOWSERVE US, INC., a Delaware Corporation and individually and as successor in interest to EDWARDS VALVES and ROCKWELL

8

EDWARD VALVES, manufactured, produced, sold, distributed or supplied, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, pumps and valves, which incorporated, specified, required, or foreseeably used asbestos-containing packing as defined above. In addition, Defendant also manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, repair and/or replacement kits, sets, or materials including, without limitation, asbestos-containing products and asbestos-containing packing materials as defined above. This Defendant also incorporated, specified, required or reasonably foresaw that its equipment would be insulated with asbestos-containing materials on their exterior.

(f).    Equipment Defendant, GARDNER DENVER, INC., a Delaware corporation, manufactured, produced, sold, distributed and/or supplied, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, asbestos-containing products including, without limitation, pumps, compressors, and blowers, which incorporated, specified, required, or foreseeably used asbestos-containing packing as defined above. In addition, Defendant also manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, repair and/or replacement kits, sets, or materials including, without limitation, asbestos-containing products and asbestos-containing packing as defined above. This Defendant also incorporated, specified, required or reasonably foresaw that its equipment would be insulated with asbestos-containing materials on their exterior.

(g).    Equipment Defendant, GOULDS PUMPS LLC, a Delaware corporation, manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to the Plaintiff, to one or more of the Plaintiff's employers, and/or to others for use on the jobsite where Plaintiff performed his job duties, asbestos-containing products including, without limitation,

pumps, condensate pumps, main sea water cooling pumps, low pressure brine pumps, auxiliary sea water pumps, distillate pumps, distilling plant distillate pumps, distilling plant low pressure brine pumps, distilling system high pressure brine pumps, low pressure brine and acid circulating pumps, and pump repair and/or replacement material including asbestos-containing products including, without limitation, asbestos-containing packing material and asbestos-containing gasket material as defined above.

(h).   Equipment Defendant, GRINNELL LLC, a Delaware corporation, manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to the Plaintiff and/or Plaintiff's employers, asbestos-containing products including, without limitation, valves and/or repair and/or replacement materials including asbestos-containing packing as defined above.  This Defendant also incorporated, specified, required or reasonably foresaw that its equipment would be insulated with asbestos-containing materials on their exterior.

(i).   Equipment Defendant, IMO INDUSTRIES, INC., a Delaware corporation, as successor in interest to DELAVAL PUMPS, manufactured, specified, produced, distributed and/or sold, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, asbestos-containing products including, without limitation, pumps, which incorporated, specified, required, or foreseeably used asbestos-containing packing as defined above. In addition, Defendant also manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, repair and/or replacement kits, sets, or materials including, without limitation, asbestos-containing products and asbestos-containing packing as defined above. This Defendant also manufactured, incorporated, specified, supplied, required or reasonably foresaw that its equipment would be insulated with asbestos-containing materials on their exterior.

10

(j).    Defendant, J. HENRY HOLLAND CORPORATION, a Virginia corporation, manufactured, produced, distributed and/or sold, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, asbestos-containing products and/or insulation materials including, without limitation, asbestos-containing packing as defined above.

(k).    Equipment Defendant, J. R. CLARKSON COMPANY LLC, a Nevada corporation and Successor by mergers to KUNKLE INDUSTRIES, INC., who manufactured, produced, sold, distributed and/or supplied, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, asbestos-containing products including, without limitation, valves and steam traps, which incorporated, specified, required, or foreseeably used asbestos-containing packing as defined above. In addition, Defendant also manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, repair and/or replacement kits, sets, or materials including, without limitation, asbestos-containing products and asbestos-containing packing as defined above. This Defendant also incorporated, specified, required or reasonably foresaw that its equipment would be insulated with asbestos-containing materials on their exterior.

(l).    Defendant, JOHN CRANE, INC., a Delaware corporation, manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, asbestos-containing products including, without limitation, asbestos-containing packing as defined above.

(m).    Equipment Defendant, NASH ENGINEERING COMPANY, a Connecticut corporation, manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, asbestos-containing products including, without limitation, pumps, which incorporated, specified, required, or foreseeably

11

used asbestos-containing packing as defined above. In addition, Defendant also manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, repair and/or replacement kits, sets, or materials including, without limitation, asbestos-containing products and asbestos-containing packing as defined above. This Defendant also incorporated, specified, required or reasonably foresaw that its equipment would be insulated with asbestos-containing materials on their exterior.

(n).    Defendant, SB DECKING INC., a/k/a SELBY BATTERSBY, a Delawrae corporation, manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to the Plaintiff and/or Plaintiff's employers, asbestos-containing products including, without limitation, floor tile and/or decking products including Magnesite and Selbalith, Kaylo block and/or other materials.

(o).    Equipment Defendant, THE WILLIAM POWELL COMPANY, an Ohio corporation, manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to the Plaintiff and/or Plaintiff's employers, asbestos-containing products including without limitation, asbestos-containing products including, without limitation, gate, globe and/or check valves and/or valve repair and/or replacement material including asbestos-containing packing as defined above.

(p).    Defendant, UNION CARBIDE CORPORATION, a New York corporation, manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, asbestos-containing products including, without limitation, electrical products, plasters, and asbestos resins such as General Purpose Bakelite, Heat Resistant Bakelite, High Impact Heat Resistant Bakelite, Bakelite Molding Compound.  This Defendant also sold and/or distributed bulk quantities of raw asbestos fibers

mined from the Calidria Mines to many of the defendants listed herein for incorporation into their asbestos-containing products under various trade names.

(q).    Equipment Defendant, VIKING PUMP, INC., manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to the Plaintiff and/or one or more of the Plaintiff's employers, asbestos-containing products including, without limitation, pumps, condensate pumps, main sea water cooling pumps, low pressure brine pumps, auxiliary sea water pumps, distillate pumps, distilling plant distillate pumps, distilling plant low pressure brine pumps, distilling system high pressure brine pumps, low pressure brine and acid circulating pumps, and pump repair and/or replacement material including, without limitation, asbestos-containing products, asbestos-containing packing material and asbestos-containing gasket material as defined above.

(r).    Defendant, WACO, INC., a corporation incorporated under the rules of Virginia having its corporate offices at 814 Chapman Way, Newport News, Virginia, and a successor to WACO INSULATION, INC, sold, distributed and/or supplied, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, various asbestos-containing products including, without limitation, ship construction and/or repair products like pipecovering sections, block, cement and textiles manufactured by different companies.

(s).    Equipment Defendant, WARREN PUMPS LLC, a Massachusetts corporation, manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to Plaintiff and/or Plaintiff's employers, asbestos-containing products including, without limitation, pumps, which incorporated, specified, required, or foreseeably used asbestos-containing packing as defined above. In addition, Defendant also manufactured, produced, distributed, sold and/or supplied, either directly or indirectly, to Plaintiff and/or Plaintiff's

13

employers, repair and/or replacement kits, sets, or materials including, without limitation, asbestos-containing products and asbestos-containing packing as defined above. This Defendant also incorporated, specified, required or reasonably foresaw that its equipment would be insulated with asbestos-containing materials on their exterior.

12.     Throughout THADDIUS A. JOHNSON's employment at Huntington Ingalls Incorporated f/k/a Newport News Shipbuilding & Dry Dock Company, Newport New, Virginia and Norfolk Naval Shipyard, Portsmouth, Virginia, he worked aboard vessels, both in dry dock and on the navigable waters of the United States, including without limitation the territorial waters of the Commonwealth of Virginia, performing the traditional maritime activities of shipbuilding and/or ship repair.  Plaintiffs are unaware of any actionable exposure on the high seas. During the performance of traditional maritime activities while employed at Huntington Ingalls Incorporated f/k/a Newport News Shipbuilding & Dry Dock Company, Newport New, Virginia and Norfolk Naval Shipyard, Portsmouth, Virginia, THADDIUS A. JOHNSON was continuously and daily required to install, remove, repair, alter, fabricate, work with, use, handle and/or otherwise come into contact with and/or to be exposed to asbestos-containing products that were manufactured, sold, supplied, distributed and/or otherwise placed in the stream of commerce by Defendants, resulting in inhalation of asbestos dust, fibers and/or particles generated from the intended, ordinary and foreseeable use of Defendants' asbestos-containing products.    Plaintiff's clothes, his person, and/or his belongings were covered with and contaminated with asbestos dust, fibers and/or particles generated from the intended, ordinary and foreseeable use of Defendants' asbestos-containing products. Plaintiff's aforesaid exposure to and inhalation of asbestos dust, fibers and/or particles proximately resulted in Plaintiff's contracting malignant mesothelioma, which is permanent and/or fatal.

## COUNT I - NEGLIGENCE

13.     Plaintiffs hereby incorporate by reference Paragraphs ONE (1) through TWELVE (12), inclusive, as if the same were hereto set forth at length.

14.     At all times material hereto, Plaintiff THADDIUS A. JOHNSON was not aware of the nature and extent of the danger to his respiratory system, heart, other bodily parts, and general health that would result from his contact with, exposure to and inhalation of the asbestos dust, fibers, and/or particles resulting from the intended, ordinary and foreseeable use of Defendants' asbestos-containing products; whereas, each Defendant was negligent in the following respects:

(a).     Defendants knew, had reason to know, should have known and/or could have reasonably determined that the normal, foreseeable use of their asbestos-containing products posed an unreasonable danger without a warning for one or more of the following reasons:

(1).     Defendants knew, had reason to know, or should have known of historic state of the art literature and other information placing them on notice of the hazards of asbestos and products containing asbestos;

(2).     Defendants designed and intended their end products to incorporate asbestos or asbestos-containing component parts, including, without limitation, asbestos-containing gaskets and packing;

(3).     Defendants knew, had reason to know, or should have known, that their end products required asbestos or asbestos component parts to function properly and as designed for their normal, foreseeable uses during the relevant time period;

15

(4).      Equipment Defendants knew, expected, and intended that asbestos-containing components and substantially identical replacement asbestos-containing components would be used throughout the useful life of their end products;

(5).      Equipment Defendants knew, had reason to know or should have known that these asbestos-containing component parts were wear items that would have to be replaced many times during the useful life of their end products;

(6).      Equipment Defendants affirmatively specified that asbestos components and replacement parts be used with their end products;

(7).      Equipment Defendants knew, had reason to know or should have known that their customers would use asbestos-containing replacement parts with Equipment Defendants' end products;

(8).      Equipment Defendants knew, had reason to know, or should have known, that the replacement asbestos-containing component parts would be substantially identical to the original asbestos-containing component parts supplied with their end products;

(9).      Equipment Defendants knew, had reason to know, or should have known that replacement asbestos-containing component parts would give rise to hazards identical to those posed by the original asbestos-containing component parts during the normal, foreseeable use of Equipment Defendants' end products;

(10).    Equipment Defendants profited from selling their asbestos-containing end products in that, by designing and manufacturing a durable end product that was able to operate for many years or decades because of the ability to routinely replace internal wear items such as asbestos-containing gaskets and packing, Equipment Defendants were able to

16

charge more money and receive a greater profit than if the end product lasted only until the original asbestos-containing component parts wore out;

(11).   Defendants were able to, and did, obtain liability insurance against the foreseeable asbestos health hazards inherent in the normal foreseeable use of their products.

(b).   Because of this knowledge, Defendants knew, had reason to know, or should have known that Plaintiff would inhale asbestos dust, fibers and/or particles during or as a consequence of the intended, ordinary and foreseeable use of their asbestos-containing products. Despite this knowledge, Defendants, individually, jointly, and severally were negligent pursuant to maritime negligence law in one or more of the following respects:

(1).   Defendants mined, manufactured, sold, distributed, and/or otherwise placed in the stream of commerce asbestos-containing products, which Defendants knew or in the exercise of ordinary care should have known, and/or had reason to know, were imminently and inherently dangerous, defective, and otherwise highly harmful to Plaintiff and others exposed to asbestos dust, fibers and/or particles resulting from the intended, ordinary and foreseeable use of their asbestos-containing products;

(2).   Defendants failed to take reasonable precautions or to exercise reasonable care to adequately or sufficiently warn Plaintiff, of the dangers and harm to which he was exposed as a consequence of the inhalation of asbestos dust, fibers and/or particles resulting from the intended, ordinary and foreseeable use of their asbestos-containing products;

(3).   Defendants failed and omitted to provide Plaintiff with the knowledge of reasonably safe and sufficient safeguards, wearing apparel, proper safety equipment and appliances needed to protect him from being injured, disabled, killed, or otherwise harmed by working with, using, handling, coming into contact with, and inhaling the

17

asbestos dust, fibers and/or particles resulting from the intended, ordinary and foreseeable use of their asbestos-containing products;

(4).    Defendants failed to place any warnings or adequate and sufficient warnings on or inside the containers or packaging of their asbestos-containing products or to suitably and adequately apprise Plaintiff in any other way of the risks and dangers inherent to the intended, ordinary and foreseeable use of their asbestos-containing products and the precautions necessary to make their asbestos-containing products safe for their intended, ordinary and foreseeable uses;

(5).    Defendants failed to place any warnings or adequate and sufficient warnings on or inside the containers or packaging of their asbestos-containing products, in written materials submitted with the products, or to suitably and adequately apprise Plaintiff in any other way of the dangers inherent in the repair and replacement of such asbestos-containing products, which repair and replacement foreseeably required the removal of friable and inherently dangerous asbestos-containing packing and/or insulation materials.

(6).    Defendants failed to place warnings, or adequate and sufficient warnings on or inside the containers or packaging of their asbestos-containing products or in technical manuals, drawings, or specifications supplied with their asbestos-containing products to inform Plaintiff of the enhanced risk and dangers inherent in the intended, ordinary and foreseeable use of their asbestos-containing products in the environment of military shipbuilding and/or ship repair where Defendants knew, should have known and/or had reason to know that many other asbestos-containing products were also being dangerously and simultaneously used without controls of safety procedures;

(7).    Defendants failed to adequately test their asbestos-containing

18

products to determine the nature and extent of the risk from the foreseeable use, maintenance, repair and/or removal of their products and the need for warnings and recommended safety instructions to eliminate or reduce that risk;

(8).     Defendants failed to advise Plaintiff, whom Defendants knew, should have known, and/or had reason to know, would be exposed to asbestos dust, fibers and/or particles resulting from the intended, ordinary and foreseeable use of their asbestos-containing products, to cease all future exposure to asbestos dust, fibers and/or particles, to be examined by a lung specialist to determine the nature and extent of any and all asbestos diseases caused by such exposure, and to receive treatment for such diseases.

15.     Such negligent and deliberate acts of Defendants proximately resulted in Plaintiff's long-term inhalation of asbestos dust, fibers and/or particles from the intended, ordinary and foreseeable use of Defendants' asbestos-containing products, including the routine, recommended and expected maintenance of Defendants' asbestos-containing products, and this exposure directly and proximately caused Plaintiff THADDIUS A. JOHNSON to contract malignant mesothelioma, which is permanent and/or fatal.

16.     Defendants' foregoing acts, failures and/or omissions were willful or wanton in nature, were undertaken with actual or constructive knowledge that injury would result, and/or were accomplished with such recklessness as to evince a conscious disregard for the health, safety, and rights of Plaintiff.

(Space Intentionally Blank)

## COUNT II - BREACH OF IMPLIED WARRANTY

17.    Plaintiffs hereby incorporate by reference Paragraphs ONE (1) through SIXTEEN (16), inclusive, as if the same were hereto set forth at length.

18.    Defendants impliedly warranted that their asbestos-containing products were reasonably fit for use and safe for their intended purposes.

19.    At the time of the manufacture and sale of their asbestos-containing products to Plaintiff and/or Plaintiff's employers, Defendants knew, should have known and/or had reason to know, that Plaintiff THADDIUS A. JOHNSON was a person whom Defendants might reasonably have expected to use, consume, or be affected by their asbestos-containing products.

20.    Throughout the years that Plaintiff was exposed to Defendants' asbestos-containing products, Defendants expected that their asbestos-containing products would reach, and they in fact did reach, the ultimate user or consumer without substantial change in the condition in which they were sold.

21.    Defendants' asbestos-containing products were sold in a defective condition in that they were incapable of being made safe for their intended, ordinary and foreseeable use, and said Defendants failed to give adequate or sufficient warnings or instructions about the unreasonable risks and dangers inherent in their asbestos-containing products.

22.    Defendants breached said warranties to Plaintiff in that their asbestos-containing products were imminently and inherently dangerous, defective, hazardous, unfit for use, not properly merchantable, and not safe for their intended, ordinary and foreseeable uses and/or purposes and such breaches proximately resulted in Plaintiff contracting malignant mesothelioma, which is permanent and/or fatal.

23.    Defendants' breaches of said warranties to Plaintiff were willful or wanton in

20

nature, were undertaken with actual or constructive knowledge that injury would result, and/or were accomplished with such recklessness as to evince a conscious disregard for the health, safety, and rights of Plaintiff.

(Space Intentionally Blank)

## COUNT III – STRICT LIABILTY

24.     Plaintiffs hereby incorporate by references Paragraphs ONE (1) through TWENTY-THREE (23), inclusive, as if the same were hereto set forth at length.

25.     At all times, Defendants knew, had reason to know and/or in the exercise of reasonable care  should have known, that their asbestos-containing products would be sold to the public including Plaintiff and/or Plaintiff's employers as aforesaid and would be used by or around Plaintiff THADDIUS A. JOHNSON and other persons similarly employed, and would be relied on by such persons to be fit for the use and to accomplish the purpose for which they were mined, manufactured, produced, processed, sold, supplied, distributed, and/or otherwise placed in the stream of commerce.  Defendants, because of their positions as miners, manufacturers, producers, processors, sellers, suppliers, and/or distributors, are strictly liable to Plaintiff for the following reasons:

(a).     Defendants, as manufacturers-sellers, are engaged in the business, inter alia, of selling asbestos-containing products;

(b).     At the time of the manufacture and sale of their asbestos-containing products by Defendants to Plaintiff and/or Plaintiff's employers, Defendant knew, had reason to know, and/or should have known, that their asbestos-containing products would be used by or around Plaintiff THADDIUS A. JOHNSON and other persons similarly employed, as the ultimate user or consumer or otherwise affected person;

(c).     Defendants' asbestos-containing products were sold in a defective condition, unreasonably dangerous to Plaintiff THADDIUS A. JOHNSON and other similarly employed, as users or consumers, andDefendants' asbestos-containing products were expected to, and did, reach the user or consumer without substantial change in the condition in which they

22

were sold;

        (d).    Defendants' asbestos-containing products were defective in that they were incapable of being made safe for their intended, ordinary and foreseeable use, and Defendants failed to give adequate or sufficient warnings or instructions about the risks and dangers inherent in the products; and/or

        (e).    The intended, ordinary and foreseeable use of Defendants' asbestos-containing products is an intrinsically dangerous and/or ultrahazardous activity.

26.    Defendants' breaches of duty under traditional maritime strict liability standards, as restated and summarized in §402(A) of the Restatement (Second) of Torts, as described herein proximately caused or contributed to cause Plaintiff THADDIUS A. JOHNSON to contract malignant mesothelioma, which is permanent and/or fatal.

27.    Defendants' breaches of duty under traditional maritime strict liability standards, as restated and summarized in §402(A) of the Restatement (Second) of Torts, as described herein were willful or wanton in nature, were undertaken with actual or constructive knowledge that injury would result, and/or were accomplished with such recklessness as to evince a conscious disregard for the health, safety, and rights of Plaintiff THADDIUS A. JOHNSON.

(Space Intentionally Blank)

## COUNT IV: SPOUSAL PRE-DEATH LOSS
## OF SOCIETY AND CONSORTIUM

28.     Plaintiffs hereby incorporate by reference Paragraphs ONE (1) through TWENTY-SEVEN (27), inclusive, as if the same were hereto set forth at length.

29.     Plaintiffs THADDIUS A. JOHNSON and ANDREA E. JOHNSON were married on December 31, 1990,  and have lived together as a married couple for more than 27 years. Throughout that time, THADDIUS A. JOHNSON has been available to comfort, protect, care for, aid, attend to, and support ANDREA E. JOHNSON physically, mentally, and emotionally.

30.     As set forth above, Plaintiff THADDIUS A. JOHNSON suffers from malignant mesothelioma, a debilitating and terminal condition with an average life expectancy of six to eighteen months. Plaintiff's disease and its impact upon his bodily systems, along with the necessary and proper treatments for that disease have caused him extreme fatigue, pain, constipation, nausea, loss of appetite, repeated hospital treatments and surgery. As his disease has progressed, he has been largely confined to his home with the exception of medical treatments, and he has been unable to participate in any of the normal recreational, social, or marital activities of life which are normal to a good marriage and to which THADDIUS A. JOHNSON and ANDREA E. JOHNSON have been accustomed.

31.     As a proximate result of Defendants' failures to warn, which were substantial contributing factors in the development of Plaintiff THADDIUS A. JOHNSON's disease and condition as set forth above, Plaintiff's Spouse ANDREA E. JOHNSON has been deprived of the physical, mental, and emotional services, comfort, society, attentions, pleasure, solace, fellowship, marital life, companionship, and consortium of her husband.

(Space Intentionally Blank)

24

### COUNT V - CONCLUSION

32.     Plaintiffs hereby incorporate by reference Paragraphs ONE (1) through THIRTY-ONE (31) inclusive, as if the same were hereto set forth at length.

33.     As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness, willful or wanton misconduct, breach of warranty, strict liability, fraudulent concealment, misrepresentations and willful omissions of Defendants, Plaintiff THADDIUS A. JOHNSON was caused to contract diseases and injuries to his body systems, lungs and heart, including malignant mesothelioma, which have caused Plaintiff pain, suffering, mental anguish and ultimately may cause his death.  In addition, THADDIUS A. JOHNSON:

(a).     Has been obliged to spend various sums of money to treat his diseases and injuries; and may be obliged to continue to do so in the future;

(b).     Has sustained a loss of earnings and earning capacity;

(c).     Has had his enjoyment of life impaired;

(d).     Has had his life expectancy shortened; and

(e).     Has been caused to suffer great psychological and mental trauma.

34.     Any delay in filing Plaintiffs' causes of action is a direct and proximate result of Defendants' failure to warn and the fraudulent concealment hereinafter described:

(a).     For a long time Defendants have known of the hazards of asbestos inhalation and ingestion and had the duty to warn foreseeable users like Plaintiff of the hazards of their asbestos-containing products.  However, Defendants intentionally and fraudulently concealed said knowledge from Plaintiff resulting in the failure of Plaintiff to discover the facts which are the basis of his causes of action despite the exercise of due diligence on behalf of Plaintiff.  Accordingly, any attempt on the part of any Defendant to complain about the

25

timeliness of the commencement of Plaintiffs' causes of action should be estopped.

35.    By reason of the aforesaid injuries to Plaintiff, THADDIUS A. JOHNSON, Plaintiff's Spouse, ANDREA E. JOHNSON has suffered mental anguish by being forced to witness the suffering endured by Plaintiff whereby Plaintiff's Spouse's own nerves and health have been seriously and permanently shocked, weakened and impaired; and by reason of the physical and mental condition of Plaintiff, Plaintiff's Spouse continues to suffer in mind and body, and has been denied the care, protection, consideration, companionship, consortium, services, income, aid, pleasure, assistance, and society of Plaintiff.

WHEREFORE, Plaintiffs pray for judgment against Defendants, individually and jointly and severally, for compensatory damages in the sum of TWENTY MILLION DOLLARS ($20,000,000.00) and punitive damages in the sum of TWENTY MILLION DOLLARS ($20,000,000.00) together with interest from the date of diagnosis of asbestos-induced disease plus costs of this suit and such other and further relief as is just and proper.

(Space Intentionally Blank)

Respectfully submitted,

PATTEN, WORNOM, HATTEN
& DIAMONSTEIN, L.C.

By: _____
         Of Counsel

Erin E. Jewell, Esquire (VSB No. 71082)
Robert R. Hatten, Esquire (VSB No. 12854)
Donald N. Patten, Esquire (VSB No. 06869)
Hugh B. McCormick, III, Esquire (VSB No. 37513)
William W. C. Harty, Esquire (VSB No. 45447)
Jennifer W. Stevens, Esquire (VSB No. 43275)
Jeannette M. Dodson-O'Connell, Esquire (VSB No. 92206)
Spencer Reiss, Esquire (VSB No. 92475)
PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, VA 23602
Telephone (757) 223-4500
Facsimile (757) 249-3242
pleadings@pwhd.com
eejewell@pwhd.com

PLAINTIFFS DEMANDS A JURY WITH RESPECT TO ALL ISSUES
TO WHICH THEY ARE ENTITLED BY LAW TO A JURY.