**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**DEBORAH J. LAUGHLIN, Individually and as**
**Executor of the Estate of PATRICK A.**
**LAUGHLIN, deceased and JOYCE D.**
**BLAYLOCK, as Substitute Ancillary**
**Administrator of the Estate of PATRICK A.**
**LAUGHLIN, deceased**

      **Plaintiffs,**

                                        **Case No. 4:18-cv-132-RAJ - LRL**

**v.**

**JOHN CRANE, INC.,** *et al.*,

      **Defendant.**

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR**
**LEAVE TO FILE A SECOND AMENDED COMPLAINT TO CONFORM TO**
**THE EVIDENCE AND PROCEDURAL POSTURE OF THIS CASE**

Plaintiffs, by counsel, pursuant to Federal Rule of Civil Procedure 15(a)(2), submit the following *Memorandum in Support of Motion for Leave to File a Second Amended Complaint to Conform to the Evidence and Procedural Posture of this Case.* Plaintiffs' proposed second amended complaint is attached as **Ex. 1.** In support of their motion, Plaintiffs respectfully state as follows:

**INTRODUCTION**

1.      This is a general maritime product liability case involving asbestos exposure and mesothelioma, which, for all intents and purposes, is factually similar to the case *Mullinex v. John Crane, Inc.*, Civ. Act. No.: 4:18-cv-0033 that is currently pending in this Court. The only major difference is that Mr. Laughlin served as a machinist mate in the Navy aboard one ship from 1969 until 1973 whereas Mr. Mullinex served as a machinist mate in the Navy aboard many ships from 1969 until 1989.

2.      Plaintiffs are Deborah J. Laughlin, the surviving spouse and Executor of the Estate of Patrick A. Laughlin[1] and Joyce D. Blaylock, Substitute Ancillary Administrator of the Estate of Patrick A. Laughlin.

3.      The sole remaining Defendant in this case is John Crane, Inc. (hereinafter, "JCI").

4.      Decedent, Patrick A. Laughlin, and his wife, Deborah J. Laughlin, filed their original complaint on August 31, 2018, in the Circuit Court for the City of Newport News, Virginia. JCI removed the case to this Court on October 19, 2018. (ECF 1).

5.      On November 27, 2018, while decedent, Mr. Laughlin, was still alive, he and his wife filed their first amended complaint in this Court alleging that all Defendants, including JCI, were negligent and strictly liable for their failure to warn of the hazards of their asbestos-containing products, and that Defendants' failures to warn were substantial contributing factors in causing him to develop mesothelioma. (ECF 70). In addition, Plaintiff, Deborah J. Laughlin, the dependent wife of Patrick A. Laughlin, alleged that the Defendants' failures to warn caused her to lose the consortium and society of her husband prior to his death, and she sought recovery pursuant to *American Export Lines, Inc. v. Alvez,* 446 U.S. 274, 276 (1980) (allowing a plaintiff's spouse to recover damages for loss of society in connection with a nonfatal injury).

6.      The original Rule 26(f) Pretrial Order for this matter was entered on April 4, 2019, and it provided for completion of all discovery by October 31, 2019. (ECF 132). All discovery was completed pursuant to this Order, including the depositions of Plaintiff, Deborah J. Laughlin, and Heather Parlette, Carrie Harry, and Rachael Ritchie, the adult daughters of Deborah J.

---

[1] On March 3, 2021, Deborah J. Laughlin, a resident of Dayton, Ohio, was appointed Executor of the Estate of Patrick Laughlin by the Probate Court of Montgomery County, Ohio. (ECF 322-2).

Laughlin and Patrick A. Laughlin. Accordingly, all of Mr. Laughlin's statutory beneficiaries under Virginia's wrongful death statute have already been deposed. *See* Va. Code ann. § 8.01-53.

7.      This case was originally scheduled to begin trial on March 10, 2020, while Mr. Laughlin was still alive. (ECF 135). However, before trial could occur in this case, the case was stayed "pending resolution of dispositive motions" that both parties had filed. (ECF 219). Following this Court's Order staying the case, the coronavirus pandemic hit, which caused this case to be even further delayed, through no fault of either party. The Court lifted the stay in this case on October 1, 2020. (ECF 272). However, as a result of the coronavirus, this case has been rescheduled for trial multiple times since then. (ECF 326, ECF 332). Trial is now scheduled to begin on November 1, 2022. (ECF 434). However, Plaintiffs understand that trial in this case may be continued until after resolution of the trial in *Mullinex* because both cases involve similar issues that need to be addressed by this Court.

8.      On January 5, 2021, Mr. Laughlin died from complications of his asbestos-induced mesothelioma. (ECFs 317 and 322-1). On January 26, 2021, Plaintiffs filed a "Suggestion of Death" pursuant to Fed. R. Civ. P. 25, wherein Plaintiffs disclosed Mr. Laughlin's death to this Court and noted that "[u]nder maritime law, Patrick A. Laughlin's claims survive his death . . . [so] Mrs. Laughlin's claims continue unabated." (ECF 317 at 1-2).

9.      On March 31, 2021, Plaintiffs moved to substitute the decedent, Patrick A. Laughlin, with Deborah J. Laughlin, who had been appointed Executor of the Estate of Patrick A. Laughlin, and Jennifer W. Stevens, Esq., ["Stevens"], who had been appointed Ancillary Administrator of the Estate of Patrick A. Laughlin, pursuant to Fed. R. Civ. P. 25(a). (ECF 320). Thereafter, on June 24, 2022, Joyce D. Blaylock, as Substitute Ancillary Administrator, was substituted as a proper party in place of Stevens. (ECF 442).

10.    Following Mr. Laughlin's death, Plaintiffs intended to pursue a survival cause of action under maritime law relying in good faith on the Virginia Supreme Court's decision in *John Crane, Inc. v. Hardick*, 732 S.E.2d 1, 4 (Va. 2012) ("*Hardick II*") along with several other state and federal court opinions that followed *Hardick II*'s reasoning.[2] *See Evans v. John Crane, Inc.*, C.A. No. 15-681, 2019 WL 5457101, at \*4-\*5, n. 6 (D. Del. Oct. 24, 2019) (rejecting JCI's argument that a plaintiff's recovery is limited to pecuniary damages, and holding that "general maritime law – not DOHSA – applies to survival claims arising from an indivisible injury") (citing and distinguishing *The Dutra Group v. Batterton*, 139 S.Ct. 2275, 2283 (2019) and noting that "[t]he facts of the present case do not involve a claim for unseaworthiness, and the Supreme Court expressly acknowledged that punitive damages are permitted for other maritime torts, including maintenance and cure"); *Bell v. Foster Wheeler Energy Corp.*, Civ. Act. No. 15-6394, 2017 WL 889074, at \*3 (E.D. La. Mar. 6, 2017) (agreeing with *Hardick* and noting that the court "has not been directed to any on point authority suggesting a contrary result. Accordingly, the survival claim is not barred by DOHSA"); *Hays v. John Crane, Inc.*, Case No. 09-81881-CIV-KAM, 2014 WL 10658453, at \*2, \*5 (S.D. Fl. Oct. 10, 2014) (rejecting JCI's argument and agreeing with *Hardick* that the plaintiff was entitled to a survival cause of action, and that DOHSA did not preempt plaintiff's damages); *McAllister v. McDermott, Inc.*, Civ. Act. 18-361-SDD-RLB, 2020 WL 4745743 at \*19 (M.D. La. Aug. 14, 2020) (citing *Bell*, 2017 WL 889074 at \*6) (relying on

---

[2] Plaintiffs also relied on the fact that every Federal Circuit Court to consider the issue has recognized a general maritime survival cause of action and allowed for recovery of pre-death pain and suffering damages. *Wahlstrom v. Kawasaki Heavy Indus., Ltd.,* 4 F.3d 1084, 1094 (2nd Cir. 1993); *Evich v. Connelly*, 759 F.2d 1432, 1434 (9th Cir. 1985); *Kuntz v. Windjammer Barefoot Cruises*, 573 F. Supp. 1277, 1284 (W.D. Pa. 1983), *aff'd*, 738 F.2d 426 (3d Cir. 1984); *Law v. Sea Drilling Corp.*, 523 F.2d 793, 795 (5th Cir. 1975); *Barbe v. Drummond*, 507 F.2d 794, 799-800 (1st Cir. 1974); *Spiller v. Thomas M. Lowe, Jr. & Associates, Inc.*, 466 F.2d 903 909 (8th Cir. 1972); *Greene v. Vantage Steamship Corp.,* 466 F.2d 159, 166 & n.9 (4th Cir. 1972).

*Bell*, which relied on *Hardick*, and stating that a decedent seaman's "estate can bring a survival action to recover all losses suffered during the decedent's lifetime").

11.      Plaintiffs have also previously indicated that they may pursue a maritime wrongful death cause of action in accordance with *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 379, (1970). (ECF 321 at 3). Mrs. Laughlin likewise indicated her intent to pursue her own cause of action for her loss of consortium and society which she suffered as a result of Mr. Laughlin's mesothelioma. (*Id.*). Lastly, in their *Fourteenth Supplemental Rule 26(a)(1) Disclosures Regarding Patrick A. Laughlin*, which were forwarded to JCI on January 5, 2022, Plaintiffs specifically stated that Mr. Laughlin's adult daughters may "have information relative to their damages as a result of their father's wrongful death, including their damages under Va. Code § 8.01-52." (*See* **Ex. 2** at 7). However, prior to this Court's June 10, 2022, Memorandum Opinion in *Mullinex v. John Crane, Inc.*, Plaintiffs were unsure that they could recover any wrongful death damages under *Moragne*'s general maritime wrongful death cause of action, or that they could supplement their damages with Virginia's wrongful death statute, as permitted by the United States Supreme Court in *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996), given the Virginia Supreme Court's holding in *Hardick II.*

12.      On June 10, 2022, this Court granted JCI's motion to dismiss the plaintiff's survival cause of action in *Mullinex* and ruled that the plaintiff in *Mullinex* could not recover for Mr. Mullinex's pre-death pain and suffering or his medical expenses in a general maritime survival cause of action. *See Mullinex v. John Crane, Inc.*, Case No. 4:18-cv-0033, 2022 WL 2110693 (E.D. Va. June 10, 2022). In its opinion, this Court expressly rejected the Virginia Supreme Court's decision in *Hardick II* and held that general maritime law does not recognize a survival cause of action. *See id.* at *4-5, & n.2. Instead, this Court held that maritime survival causes of action are

only available under the Jones Act in cases between Jones Act seamen and their employers. *See id.* at 4. On this point, this Court held, unlike the Court in *Hardick II*, that "'[t]he identity of the defendant should matter.'" *Id.* (quoting *Dennis v. Air & Liquid Sys. Corp.*, No. CV 19-9343-GW-KSx, 2021 WL 3555720, at *28 (C.D. Cal. Mar. 24, 2021)). Accordingly, this Court held that the plaintiff's damages in *Mullinex* were not dictated by the Jones Act because "'the beneficiary provisions of the Jones Act are applicable only to a specific class of actions – claims by seamen against their employers –based on violations of the special standard of negligence that has been imposed under the Federal Employers' Liability Act.'" *Mullinex*, 2022 WL 2110693, at *4 (quoting *Moragne*, 398 U.S. at 407).

13.     However, this Court concluded its June 10, 2022, Memorandum Opinion by holding that "[p]laintiff could have pursued a wrongful death claim against Defendant under Virginia law" consistent with the Supreme Court's decision in *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996). *Mullinex*, 2022 WL 2110693, at *5 (citing *Calhoun*, 516 U.S. at 201). Based upon the similarities between this case and *Mullinex,* Plaintiffs anticipate that this Court may not permit Plaintiffs, herein, to purse Mr. Laughlin's pre-death pain and suffering or medical expenses in a maritime survival cause of action in this case.[3] In light of this, Plaintiffs seek leave to amend their complaint to conform to the evidence and procedural posture of this case and to clarify the causes of action which Plaintiffs intend to pursue at trial.

---

[3] JCI has filed a *Motion in Limine to Exclude Plaintiffs' Evidence of Nonpecuniary and Survival Damages* in this case, which this Court has not yet ruled on. (*See* ECF 361, 362). Plaintiffs maintain that this Court should deny JCI's motion for the reasons discussed in their *Opposition to JCI's Motion in Limine to Exclude Plaintiffs' Evidence of Nonpecuniary and Survival Damages.* (ECF 390). By filing this motion to amend their complaint Plaintiffs are in no way waiving or withdrawing their argument that Plaintiffs are entitled to pursue survival damages in a general maritime survival cause of action in this case. Instead, Plaintiffs are merely seeking leave to amend their complaint to add a wrongful death cause of action consistent with this Court's June 10, 2022, Memorandum Opinion and *Calhoun.*

14.     Trial in this case will not begin for more than three months. (ECF 434). The parties took the deposition of all of Mr. Laughlin's family members prior to his death, and thus JCI had the opportunity to probe the relationship that Mr. Laughlin had with his wife and daughters. JCI is well aware of the strong and loving relationship that existed between Mr. Laughlin, Mrs. Laughlin and their three daughters. JCI certainly has enough information to understand how Mr. Laughlin's death impacted Mrs. Laughlin and their daughters. Further, JCI has been aware that Plaintiffs may pursue a survival cause of action under general maritime law in accordance with *Hardick II* as well as a wrongful death cause of action since March 31, 2021. (ECF 321). They have been aware that Plaintiffs may pursue a Virginia wrongful death cause of action under Va. Code Ann. §8.01-50, *et seq.*, as provided for in *Calhoun* since January 5, 2022. (*See* **Ex. 2** at 7). JCI has also been aware that Plaintiffs intended to pursue a cause of action for Mrs. Laughlin's loss of consortium since at least November 27, 2018. (ECF 70). Finally, Plaintiffs' motion comes well before the parties' Rule 26(a)(3) disclosures or the final pretrial order are due in this case, so to the extent that JCI wishes to call Mrs. Laughlin or any of Mr. Laughlin's daughters to testify at trial, JCI is free to list them as witnesses it may call at trial. (*See* ECF 434). Accordingly, JCI cannot claim that it will be prejudiced by permitting Plaintiffs to amend their complaint to conform to the evidence and procedural posture of this case.

## **LEGAL ANALYSIS**

### I.     **Standard of Review**

Fed. R. Civ. P. 15(a)(2) permits amendment of a party's complaint after obtaining leave of court. Rule 15(a)(2) states in part, "[T]he court should freely give leave when justice so requires." *Id.* It is well settled in the Fourth Circuit that leave is to be granted liberally. *Ward Electric Service, Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987), *aff'd in part and rev'd in part*,

856 F.2d 188 (4th Cir. 1988). Additionally, Fed. R. Civ. P. 15(b) permits amendments to pleadings even during and after trial to conform to the evidence when doing so will aid in presenting the merits and the opposing party will not be prejudiced. To justify a denial of leave to amend, it must appear to the Court that the amendment is futile, offered in bad faith, or prejudicial. *Id.*; *see also Roper v. County of Chesterfield*, 807 F. Supp. 1221, 1223 (E.D. Va. 1992). Indeed, "delay alone is not a sufficient reason to deny leave to amend. The delay must be accompanied by prejudice, bad faith, or futility." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509-10 (4th Cir. 1986) *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits"). Here, Plaintiffs are seeking leave to amend their complaint to conform to the evidence and procedural posture of this case. The proposed amendment is not prejudicial, is not done in bad faith, and will not be futile.

### A.      Plaintiffs Have Not Acted in Bad Faith

First, Plaintiffs have not acted in bad faith. In general, "[b]ad faith includes seeking to amend a complaint for an improper purpose . . . or seeking leave to amend after repeated 'pleading failures.'" *Wilkins v. Wells Fargo Bank N.A.*, 320 F.R.D. 125, 127 (E.D. Va. 2017) (quoting *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 461 (4th Cir. 2013)).

Plaintiffs have not acted in bad faith here. Up until this Court's June 10, 2022, Memorandum Opinion in the *Mullinex* case, it was Plaintiffs' understanding that they could recover survival damages in a survival cause of action under general maritime law. Indeed, Plaintiffs maintain that this is still the case, and that this Court should deny JCI's motion to dismiss Plaintiffs' survival cause of action in this case for the reasons discussed in *Plaintiffs' Opposition to JCI's Motion in Limine to Exclude Plaintiffs' Evidence of Nonpecuniary and Survival Damages.*

(ECF 390). However, in light of this Court's June 10, 2022, Memorandum Opinion, Plaintiffs are now seeking leave to recover Virginia's wrongful death damages, consistent with *Calhoun. See Mullinex*, 2022 WL 2110693, at *5. Indeed, prior to this Court's Order dismissing the plaintiff's survival cause of action in *Mullinex*, Plaintiffs' understanding was that they could only recover damages in a survival cause of action, consistent with *Hardick II,* rather than Virginia's wrongful death damages, consistent with *Calhoun.* To explain why Plaintiffs understood this to be the case, a brief summary of the state of the law prior to this Court's order, including the Virginia Supreme Court's holding and rationale in *Hardick I* and *Hardick II* is necessary.

The Virginia Supreme Court issued two opinions in the case *John Crane, Inc. v. Hardick*. The end result of the *Hardick* decisions permitted the plaintiff to recover pre-death pain and suffering damages in a survival cause of action, but it prohibited the plaintiff from recovering Virginia's wrongful death damages under *Calhoun. See Hardick v. John Crane, Inc.*, 722 S.E.2d 610, 616 (Va. 2012) ("*Hardick I*") (holding that the plaintiff could not recover damages under *Calhoun*), *modified on reh'g*, *Hardick*, 732 S.E.2d at 4 ("*Hardick II*") (holding that the Jones Act provides a survival cause of action, so the plaintiff could recover damages in a survival cause of action). In *Hardick I*, the Court rejected the plaintiff's argument that the plaintiff's decedent, a Navy sailor, could recover damages for loss of society because he was a "nonseafarer," as the Supreme Court defined that term in *Calhoun*. *See Hardick I*, 722 S.E.2d at 615. In *Hardick I*, the Court specifically noted that the Supreme Court in *Calhoun* defined "nonseafarers" as "'persons who are neither seamen covered by the Jones Act . . . nor longshore workers covered by the Longshore and Harbor Workers' Compensation Act'" ("LHWCA"). *Id.* (quoting *Calhoun*, 516 U.S. at 205, n.2). Nevertheless, even after defining nonseafarers in this way, the Court in *Hardick I* stated that the plaintiff could not recover damages under *Calhoun* because the plaintiff's decedent

met the broader definition of a "seaman" as the Supreme Court defined that term in *McDermott International, Inc. v. Wilander*, 498 U.S. 337, 339 (1991). *See Hardick I*, 722 S.E.2d at 615-16 (citing *Wilander* 498 U.S. at 355). In *Wilander*, the Court defined the term "seaman" broadly while it was resolving the question of "whether one must aid in the navigation of a vessel in order to qualify as a 'seaman' under the Jones Act." *Wilander*, 498 U.S. at 339.

However, *Wilander*'s definition of a "seaman" is broader than *Calhoun*'s definition of a "nonseafarer" because it encompasses everyone who could, theoretically, assert a claim against their employer under the Jones Act, rather than individuals who are actually "seamen covered by the Jones Act," *i.e.*, seamen who are actually suing their employers under the Jones Act. *Compare Calhoun*, 516 U.S. at 205, n.2 (stating "[b]y 'nonseafarers,' we mean persons who are neither seaman covered by the Jones Act . . . nor longshore workers covered by the" LHWCA); *with Wilander*, 498 U.S. at 339 (defining "seaman" broadly while resolving the question of who "qualif[ies] as a 'seaman' under the Jones Act"). Had the Supreme Court in *Calhoun* wished to make such an expansive definition of the term "nonseafarers," it would have defined nonseafarers as "seamen, as that term is defined in *Wilander*." *But see Calhoun*, 516 U.S. at 205, n.2. Yet, the Court's decision in *Calhoun* does not define nonseafarers this way at all and *Wilander* is not cited anywhere in *Calhoun*, even though the Court decided *Wilander* only five years prior to its decision in *Calhoun. See id.*

Nevertheless, even though *Wilander*'s definition of a seaman is broader and encompasses more people than *Calhoun*'s definition of a nonseafarer, the *Hardick I* Court's ruling was based on the Court's finding that a Navy seaman should be treated the same as a Jones Act seaman, no matter who he was actually suing. Thus, the Court looked to the Supreme Court's definition of a seaman in *Wilander*, even though an individual can clearly meet *Calhoun*'s definition of a

"nonseafarer" and *Wilander*'s definition of a seaman so long as the seaman is not suing his employer. *Hardick I*, 722 S.E.2d at 616; *see also Wilander*, 498 U.S. at 339. In other words, the Court in *Hardick I* rejected the plaintiff's argument that the plaintiff's decedent was a nonseafarer entitled to recover under *Calhoun* because the Court found that plaintiff's decedent met *Wilander*'s broader definition of a "seaman." *Hardick I*, 722 S.E.2d at 615-19. Initially, the Court in *Hardick I* did not allow the plaintiff to recover for either her loss of society or her decedent's pre-death pain and suffering. *Id.* at 619. However, on rehearing, the Court reinstated the plaintiff's pre-death pain and suffering damages because these damages are allowed under the Jones Act. *Hardick II*, 732 S.E.2d at 4. In sum, the consequence of the *Hardick* Court's rulings is that the plaintiff in *Hardick* could not recover for her loss of society because these damages are not recoverable under the Jones Act. *Id.* However, the plaintiff could recover for pre-death pain and suffering in a survival cause of action because the Jones Act permits survival damages. *Id.* It is for this reason that Plaintiff did not file a complaint alleging a wrongful death cause of action under *Calhoun* in this case.

However, this brings Plaintiffs to this Court's June 10, 2022, Memorandum Opinion. This Court has held the opposite of what the Virginia Supreme Court held in *Hardick* – because Plaintiffs are not suing the decedent, Mr. Laughlin's, employer, the United States Navy, Mr. Laughlin was not a seaman "covered by the Jones Act," so his damages cannot be defined by the Jones Act. *See Mullinex*, 2022 WL 2110693, at *4. (dismissing Plaintiff's survival cause of action because the Jones Act only "permits survival damages for pre-death pain and suffering and medical expenses in negligence claims by seamen against their employers"). Indeed, this Court, unlike the *Hardick* Court, believes "'[t]he identity of the defendant should matter.'" *Id.* at *5 (quoting *Dennis*, 2021 WL 3555720, at *28). Accordingly, the result of this Court's ruling is that Mr. Laughlin is a "nonseafarer," as that term is defined in *Calhoun,* and he is entitled to recover damages under

Virginia's wrongful death statute. *Mullinex*, 2022 WL 2110693, at *4 (holding that the "[p]laintiff could have pursued a wrongful death claim against Defendant under Virginia law") (citing *Calhoun*, 516 U.S. at 201 (holding that state remedies have not been displaced by the recognized federal maritime wrongful-death action)). This is a sea change from the majority rule, but the rule of this Court is now that Plaintiffs can recover damages under Virginia's wrongful death statute, consistent with *Calhoun*.

In sum, Plaintiffs have not acted in bad faith here. Instead, Plaintiffs relied, in good faith, on *Hardick II* and the law as it stood prior to this Court's June 10, 2022, Memorandum Opinion in the *Mullinex* case. However, the result of this Court's June 10, 2022, Memorandum Opinion means that Plaintiffs are entitled to recover damages under Virginia's wrongful death statute, consistent with *Calhoun*. *Mullinex*, 2022 WL 2110693, at *5 (holding that "[p]laintiff could have pursued a wrongful death claim against Defendant under Virginia law") (citing *Calhoun*, 516 U.S. at 201) (holding that state remedies have not been displaced by the recognized federal maritime wrongful-death action). Accordingly, this Court should allow Plaintiffs to amend their complaint to allege a wrongful death cause of action under *Calhoun*.

## B.     Plaintiffs' Amendment Is Not Futile

"[A]n amendment is futile when it 'is clearly insufficient or frivolous on its face.'" *Wilkins*, 320 F.R.D. at 127 (quoting *Johnson*, 785 F.2d at 510). Accordingly, courts should only deny a motion to amend "if it is apparent that 'the proposed amendments could not withstand a motion to dismiss.'" *Wilkins*, 320 F.R.D. at 127 (quoting *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)); *see also Knauer v. Johns-Manville Corp.*, 638 F. Supp. 1369, 1372 (D. Md. 1986) (noting that Courts should only deny a motion to amend where "it appears to a certainty that a plaintiff is not entitled to relief" because the plaintiff has "fail[ed] to state [a] colorable claim").

Plaintiffs' amendment is not futile for the reasons discussed above in Section I.A. Specifically, Plaintiffs' amendment is not futile because the result of this Court's June 10, 2022, Memorandum Opinion is that Plaintiffs can recover wrongful death damages under Virginia's wrongful death statute, consistent with *Calhoun*, rather than survival damages in a maritime survival cause of action, consistent with *Hardick. See Mullinex*, 2022 WL 2110693, at *5. Further, even though Plaintiffs are seeking to recover wrongful death damages under Virginia's wrongful death statute, as the Third Circuit held on remand in *Calhoun*, federal maritime law is still the substantive law of the case where a plaintiff seeks to recover for maritime torts under a state wrongful death statute. *See Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d 338, 351 (3rd Cir. 2000) (holding that maritime uniformity principles require "that federal maritime standards govern the adjudication of a defendant's (here, Yamaha's) putative liability in an admiralty action brought pursuant to a state wrongful death/survival statute")). To date, no Circuit Court has disagreed, and Plaintiffs are unaware of any cases that contradict the Third Circuit's opinion. Instead, it appears that multiple courts have agreed with the Third Circuit's decision in *Calhoun. See Hurd v. U.S.*, 134 F.Supp.2d 745, 769 (D. S.C. 2001) ("The substantive law governing a defendant's liability in an admiralty action is to be adjudicated under general maritime law, while state law may be used to assess damages"); *Goodloe v. Royal Caribbean Cruises, Ltd.*, 418 F.Supp.3d 1112, 1127 (S.D. Fl. 2019), (Noting that "[t]his action is governed by general maritime law", but that state statutes can supplement general maritime law) *aff'd*, 1 F.4th 1289 (11th Cir. 2021); *In re Antill Pipeline Cost. Co, Inc.*, 866 F.Supp.2d 563, 567 (E.D. La. 2011) (Noting that state statues can supplement general maritime law, under *Calhoun*, but that "fault and liability allocation has remained an issue governed by general federal maritime law is such actions").

Indeed, JCI has, for all intents and purposes, acquiesced to substantive maritime law applying in this case. Plaintiffs' First Amended Complaint specifically alleged "maritime claims of strict liability and negligence" and stated that "the general maritime law of the United States applies in this case." (*See* ECF 70 at 2-3). Unlike in the *Mullinex* case, JCI never moved to dismiss Plaintiffs' maritime claims or to apply Virginia law in this case. Even if it attempts to do so now, the Third Circuit's uncontroverted opinion on remand in *Calhoun* makes it is clear that substantive maritime law applies to this case any way. *See Calhoun*, 216 F.3d at 351 (noting that uniformity "is a rather strong concern in the instant matter. If we were to adopt the District Court's holding that the substantive standards by which an admiralty defendant's liability is adjudged is governed by the law of the state in which the alleged injury occurred, there would be no uniformity in such standards").

However, one important issue is raised by this Court's ruling in *Mullinex* that Plaintiffs can recover state wrongful death damages under *Calhoun.* This Court's ruling raises a potential choice of law issue regarding the question of which state law may supplement Plaintiffs' damages in the wake of Mr. Laughlin's death. In *Mullinex*, this Court held that "Plaintiff could have pursued a wrongful death claim against Defendant under Virginia law." *Mullinex*, 2022 WL 2110693, at *5 (citing *Calhoun*, 516 U.S. at 201). This Court's ruling is correct in that case because the decedent in that case, Mr. Mullinex, was domiciled in Virginia prior to his death, and the plaintiff was pursuing damages for asbestos exposure that occurred in Virginia, so Virginia's wrongful death statute may be used to supplement the plaintiff's damages in *Mullinex*. (*See* **Ex. 3**, Plaintiffs' Second Amended Complaint in *Mullinex*, at 1-2 (describing Mr. Mullinex as a "resident[] of the Commonwealth of Virginia" and noting that his Navy service, wherein he experienced his asbestos exposure, occurred "onboard ships homeported, repaired or overhauled at Navy Bases and

shipyards in the State of Virginia"); *see also* **Ex. 4**, Plaintiff's Third Amended Complaint in *Mullinex*, at 2 (noting that Mr. Mullinex's spouse "was appointed Executor of the Estate of Herbert H. Mullinex, Jr. by the Circuit Court of Augusta County, Virginia")). However, this issue becomes slightly more complex in this case because Plaintiff and her decedent, Mr. Laughlin, are Ohio residents suing for damages for asbestos exposure that occurred in Virginia. Nevertheless, Plaintiffs maintain that Virginia's wrongful death statute should supplement Plaintiffs' damages in this case, even though Plaintiffs damages could, instead, potentially be supplemented by Ohio or Illinois's more generous wrongful death and survival statutes.

As an initial matter, Plaintiffs note that this issue is largely irrelevant to whether this Court should grant *Plaintiffs' Motion for Leave to File a Second Amended Complaint to Conform to the Evidence and Procedural Posture of this Case*, because the result of this Court's June 10, 2022, Memorandum Opinion means that Plaintiffs must be able to recover damages under a state's wrongful death or survival statutes. *See Mullinex*, 2022 WL 2110693, at *5 (citing *Calhoun*, 516 U.S. at 201) (holding that state remedies have not been displaced by the recognized federal maritime wrongful death-action)). The only question that remains to be resolved is which state's law will apply. Plaintiffs maintain that Virginia's wrongful death statute should apply. Fortunately, this Court is not without guidance on this issue.

The Third and Eleventh Circuit Courts of Appeals have directly addressed this issue, and both Courts have used a multi-factor test to determine which state's laws may supplement a Plaintiffs' maritime damages under *Calhoun. See Calhoun*, 216 F.3d at 346; *Goodloe v. Royal Caribbean Cruises, Ltd.*, 1 F.4th 1289, 1295 (11th Cir. 2021). In *Calhoun* and *Goodloe*, both Courts held that because the Courts were sitting in admiralty jurisdiction, federal-choice-of-law rules dictated which damages should apply in those cases. *Calhoun*, 216 F.3d at 345; *Goodloe*, 1

F.4th at 1294-95. Accordingly, both Courts turned to the Supreme Court's opinion in *Lauritzen v. Larsen*, 345 U.S. 571 (1953) for guidance to "'analyz[e] which state had the most significant relationship to the incident and the dominant interest in have its law applied.'" *Goodloe*, 1 F4th at 1294 (quoting *Calhoun*, 216 F.3d at 346). *Lauritzen* involved an international choice-of-law issue, and the question before the Court was whether to apply United States law or Danish law. *Lauritzen*, 345 U.S. at 573. The Court applied a seven-factor test to determine the issue, and these factors included (1) place of the wrongful act; (2) law of the flag; (3) allegiance or domicile of the injured; (4) allegiance of the defendant shipowner; (5) place of contract; (6) inaccessibility of the foreign forum; and (7) law of the forum. *Id.* at 583-91.

However, before beginning their analysis, both the *Calhoun* Court and the *Goodloe* Court noted that "the *Lauritzen* factors are most often applied to determine whether the admiralty law of the United States or that of a foreign state should be applied to a particular dispute." *Calhoun*, 216 F.3d at 346; *see also Goodloe*, 1 F.4th at 1293-94. Thus, the Courts agreed that "many of these [*Lauritzen*] factors . . . do not apply to the present dispute, which concerns entirely domestic interests." *Calhoun*, 216 F.3d at 346; *Goodloe*, 1 F.4th at 1294 (noting that "two of the *Lauritzen* factors [(law of the flag and the inaccessibility of the foreign forum)] address concerns not presented in a domestic choice-of-law analysis"). Accordingly, the Eleventh Circuit distilled the *Lauritzen* factors down to six "factors to consider when conducting a domestic choice-of-law analysis under maritime law: (1) place of the wrongful act, (2) domicile of the injured, (3) domicile of the defendant, (4) place of contract, (5) law of the forum, and (6) location of the defendant's base of operations." *Goodloe*, 1 F.4th at 1295. Finally, both the *Calhoun* Court and the *Goodloe* Court also noted that a rigid application of the *Lauritzen* factors is not necessary, instead these factors are simply meant to help courts "'analyz[e] which state had the most significant

16

relationship to the incident and the dominant interest in having its law applied.'" *Id.* (quoting *Calhoun*, 216 F.3d at 346).

Applying these factors, the Court in *Calhoun* held that the plaintiff's compensatory damages should be governed by Pennsylvania law, the decedent's domicile, rather than Puerto Rico law, the location of the decedent's injury and death, because "Pennsylvania has a substantial interest in obtaining compensation for its citizens in order to remedy wrongs that have been committed against such individuals." *Calhoun*, 216 F.3d at 347. On the other hand, punitive damages were governed by Puerto Rico law because that is where the plaintiff died, so Puerto Rico had a stronger interest in "punish[ing] wrongdoers and deter[ing] future conduct" within its own waters. *Id.* at 347-48. *Goodloe*, on the other hand, held that the plaintiff's right to nonpecuniary damages was governed by Florida law even when the decedent was domiciled in Wisconsin prior to his death. 1 F.4th at 1289. The Court reasoned that Florida law should apply in this situation because "Wisconsin's wrongful death law does not apply to deaths occurring outside the state" and because "Wisconsin's sole connection [to the case] is as the domicile of the deceased." *Id.* at 1292, 1295.

To Plaintiffs' knowledge, neither the Fourth Circuit nor the Eastern District of Virginia have considered the issue of which state's wrongful death or survival statutes should apply in a case where the plaintiff seeks to supplement his maritime damages with state wrongful death or survival damages under *Calhoun*. Thus, this case presents an issue of first impression for the Eastern District of Virginia. However, another court within the Fourth Circuit, the United States District Court for South Carolina, has considered this choice of law issue in a maritime case where the plaintiffs asserted claims under South Carolina's wrongful death and survival statue. *See Hurd*, 134 F.Supp.2d at 770.

17

The *Hurd* Court began its analysis by noting that "[t]he substantive law governing a defendant's liability in an admiralty action is to be adjudicated under general maritime law, while state law may be used to assess damages." *Id.* at 769. Thus, the issue in *Hurd* was "whether Tennessee and Virginia law or the law of South Carolina applies to the determination of damages in this case." *Id.* at 769-70. In *Hurd*, the plaintiffs died after a boat that they bought in South Carolina crashed into "the north jetty leading into Charleston Harbor" in South Carolina. *Id.* at 749. As a result of the crash, "[a]ll four persons on board the" boat "drowned at sea." *Id.* The plaintiff sued the coast guard under the Federal Tort Claims Act, the Suits in Admiralty Act, the Public Vessels Acts, and general maritime law in connection with the coast guard's rescue efforts. *Id.* The *Hurd* Court considered the same *Lauritzen* factors as the *Goodloe* and *Calhoun* Courts, acknowledging that "[s]ince this case is a domestic one, most of the *Lauritzen* factors are not applicable; however, *Lauritzen* does provide guidance on the issue." *Id.* at 770. First, the *Hurd* Court noted that:

> [t]he first and third *Lauritzen* factors, (1) place of the wrongful act and (3) allegiance or domicile of the injured, are at issue in this case. [And that,] [t]he first factor weighs heavily in favor of applying the law of the state of South Carolina to this case. The decedents intentionally traveled to South Carolina where the injuries and death occurred. Moreover, the Cornetts purchased the *S/V Morning Dew* [(i.e., the boat that crashed)] in South Carolina and the entire tragic voyage took place in South Carolina. Thus, the place of the accident was not merely fortuitous.

*Id.* Ultimately, the *Hurd* Court decided that the first factor (the place of the wrongful act) outweighed the third factor (allegiance or domicile of the injured) because:

> "[t]he sole relationship of the States of Virginia and Tennessee with this litigation is that the boys lived there at the time of their ill-fated voyage, the personal representatives live there, and the decedents' estates are being administered there. Thus, the facts of this case counsel in favor of the application of South Carolina law as to the Plaintiffs' damages.

*Id.* at 771.

The *Hurd* Court's analysis is useful in this case, and it suggests that Virginia's wrongful death statute should apply. Virginia's wrongful death statute is implicated by at least the first and seventh *Lauritzen* factors (1) – the place of the wrongful act and (7) – the law of the forum. First, the place of the wrongful act in this case is Virginia because the decedent, Mr. Laughlin's, asbestos exposure occurred at Navy bases and in shipyards located within the Commonwealth of Virginia during Mr. Laughlin's Navy service onboard USS Conyngham. (*See* **Ex. 5**, *Plaintiffs' Shiplist and Chronology of Duty Stations*, (previously provided as Exhibit 7 to *Plaintiffs' Objections and Answers to the Standard Set of Interrogatories and Requests for Product of Documents*)). Indeed, each of the shipyards that Mr. Laughlin worked in during his Navy service are located in Virginia, and Mr. Laughlin's ship, USS Conyngham, was homeported in Virginia. Thus, as in the *Hurd* case, "[t]he first factor weighs heavily in favor of applying" Virginia's wrongful death statute because Virginia is where the wrongful act – Mr. Laughlin's exposure to JCI's asbestos-containing gaskets and packing – occurred in this case. 134 F.Supp.2d at 770. The seventh factor is also implicated because the "forum" in this situation is the Eastern District of Virginia.

The second *Lauritzen* factor, "law of the flag," does not apply in the domestic context. *Calhoun*, 216 F.3d at 346; *Goodloe*, 1 F.4th at 1294. The third *Lauritzen* factor "allegiance or domicile of the injured" would favor the application of Ohio's wrongful death and survival statute. *See Hurd*, 134 F.Supp.2d at 770-71; *see also* Ohio Rev. Code Ann. § 2125.01, *et. seq.* (Ohio wrongful death statute); Ohio Rev. Code Ann. § 2305.21 (Ohio survival statute). Unlike Virginia, Ohio allows for plaintiffs to recover under both a survival cause and a wrongful death cause of action. *See Wingrove v. Forshey*, 230 F.Supp.2d 808, 826 (S.D. Ohio 2002) ("[a] survivorship claim exists separate and apart from a wrongful death claim"). This means that, if Plaintiffs are able to supplement their damages with Ohio law, they could recover all of the damages available

to them under Ohio's wrongful death statute, and all of the damages available to them under Ohio's survival statute. *See* Ohio. Rev. Code Ann. § 2125.02 (enumerating damages available under Ohio's Wrongful Death Statute); *see also Whetston v. Binner*, 57 N.E.3d 1111, 1114 (Ohio 2016) (holding that punitive damages may be recovered in a survival cause of action under Ohio law); *Dickerson v. Thompson*, 624 N.E.2d 784, 787 (Ohio Ct. App. 1993) (noting that Ohio law allows the plaintiff to recover damages "for the decedent's pain and suffering" in a survival cause of action).

However, the Court in *Hurd* found that the third factor cannot trump the "place of the wrongful act" when "the sole relationship" between the third factor and the case is that the plaintiff lived in the state prior to his death, and the plaintiff's estate is administered there. *See Hurd*, 134 F.Supp.2d at 770-71.[4] As for the fourth *Laurtizen* factor, the "allegiance or domicile of the defendant shipowner", the Eleventh Circuit in *Goodloe* retooled this factor in the domestic context to include the "domicile of the defendant" and the location of the "defendant's base of operations." *Goodloe*, 1 F.4th at 1294-95. The Eleventh Circuit also noted that "[i]n a case like this one, where a single state is both the defendant's domicile and the location of its base of operations, these two factors merge into a single factor." *Id.* at 1295, n.5. This factor would favor Illinois Law, because JCI's "domicile" and "base of operations" is in Illinois. However, Plaintiffs are unaware of any Court having held that the wrongful death or survival statutes should be determined solely by the defendant's domicile, and Plaintiffs cannot think of any logical reason why Illinois would have

---

[4] Plaintiffs recognize that the *Hurd* opinion contradicts the Third Circuit's opinion in *Calhoun*, which held that the plaintiff's damages, expect for punitive damages, should be governed by Pennsylvania law because that is where the decedent lived prior to her death. *Calhoun*, 216 F.3d at 347 (holding Pennsylvania law should govern because "Pennsylvania has a substantial interest in obtaining compensation for its citizens in order to remedy wrongs that have been committed against such individuals").

"'the most significant relationship to the incident and the dominant interest in having its law applied.'" *Goodloe*, 1 F.4th at 1294 (quoting *Calhoun*, 216 F.3d at 346).[5] The fifth *Lauritzen* factor, the "place of contract" is likely inapplicable here as there was never a contract between JCI and Mr. Laughlin. *See Hurd*, 134 F.Supp.2d at 770 (declining to apply the "place of contract" factor). Finally, the sixth *Lauritzen* factor involves the "inaccessibility of a foreign forum", which doesn't apply in the domestic context. *See Goodloe*, 1 F.4th at 1294-95; *Calhoun*, 216 F.3d at 346.

In sum, the *Lauritzen* factors are merely a guide to help courts "'analyz[e] which state had the most significant relationship to the incident and the dominant interest in having its law applied.'" *Goodloe*, 1 F.4th at 1294 (quoting *Calhoun*, 216 F.3d at 346). The *Lauritzen* factors and the Court's analysis in *Hurd* demonstrate that Virginia law, and Virginia's wrongful death statute, should apply in this case, and Plaintiffs should be allowed to supplement their damages with the damages available under Virginia's wrongful death statute, consistent with *Calhoun*. *See Mullinex*, 2022 WL 2110693 at *5 (holding that the plaintiff in *Mullinex* could recover state remedies under *Calhoun*); *see also* Va. Code Ann. § 8.01-52 (enumerating the damages available under Virginia's wrongful death statute).

However, the Court does not need to decide at this time which state's law can supplement Plaintiffs' damages in order to grant *Plaintiffs' Motion for Leave to File a Second Amended*

---

[5] Like Ohio law, Illinois law also allows for a wrongful death cause of action and survival cause of action. *See* 740 Ill. Comp. Stat. 180/2; 755 Ill. Comp. Stat. 5/27-6. However, Punitive damages are not available in Illinois in either a wrongful death cause of action or a survival cause of action. *See Froud v. Celotex Corp.*, 456 N.E.2d 131, 137 (Ill. 1983). While Plaintiffs believe Illinois law should not be used to supplement Plaintiffs damages in this case, the state of Illinois provides useful guidance regarding what damages are recoverable under the Illinois wrongful death and survival statutes. Specifically, Illinois Supreme Court Rule 239 instructs Courts to use the "Illinois Pattern Jury Instructions" when applying Illinois law, which are available on the Illinois Supreme Court website, available at: https://www.illinoiscourts.gov/courts/circuit-court/illinois-pattern-jury-instructions-civil/ (last accessed July 18, 2022). *See* Ill. Sup. Ct. R. 239.

*Complaint to Conform to the Evidence and Procedural Posture of this Case* because this Court's June 10, 2022, Memorandum Opinion clearly allows for Plaintiffs to supplement their damages with a state's law, consistent with *Calhoun*. *Mullinex*, 2022 WL 2110693, at *5 (holding that the "[p]laintiff could have pursued a wrongful death claim against Defendant under Virginia law") (citing *Calhoun*, 516 U.S. at 201 (holding that state remedies have not been displaced by the recognized federal maritime wrongful-death action)). Indeed, the Court could simply grant *Plaintiffs' Motion for Leave to File a Second Amended Complaint to Conform to the Evidence and Procedural Posture of this Case* and then request additional briefing on this particular issue prior to trial. At this time the Court has not ruled on any of the pretrial motions filed in this case, and the Court could request oral argument on any additional briefs filed between now and trial in this case. Nevertheless, Plaintiffs simply bring this point to the Court's attention in this brief to demonstrate that Plaintiffs' motion is not futile, because Plaintiffs clearly can recover damages under state law, consistent with *Calhoun*, while seeking to recover for JCI's maritime torts, which are still governed by maritime substantive law. *See Calhoun*, 216 F.3d at 351.

### C.    Plaintiffs' Amendment Will Not Prejudice JCI

Prejudice, in the context of a motion to amend, occurs "when a proposed amended pleading 'raises new [a] new legal theory <u>that would require the gathering and analysis of facts not already considered by the opposing party</u>.'" *See Wilkins*, 320 F.R.D. at 127 (emphasis added) (quoting *Johnson*, 785 F.2d at 509-10). Courts have consistently allowed plaintiffs to add new causes of action that do "not require additional discovery" and thus do "not prejudice" the defendants. *See Medigen of Kentucky, Inc. v. Pub. Serv. Comm'n of West Virginia*, 985 F.2d 164, 168 (4th Cir. 1993); *see also Key v. Robertson*, Civ. Act. No. 2:08cv174, 2009 WL 5942664, at *4 (E.D. Va. Feb. 23, 2009) (granting plaintiff leave to amend his complaint less than a month before trial

because "the factual circumstances underlying the issue [were] already well known to defendants").

For example, in *Medigen*, the Fourth Circuit affirmed a trial court's decision to allow a plaintiff "to amend its complaint to add a cause of action under 42 U.S.C. § 1983." *Medigen*, 985 F.2d at 167. The Court in *Medigen* noted that the plaintiff "did not amend its complaint until six months after" the Supreme Court decided the case *Dennis v. Higgins*, 498 U.S. 439 (1991), which resolved a circuit split and specifically allowed the plaintiff to allege a cause of action under 42 U.S.C. § 1983 for a "violation[] of the Commerce Clause." *Id.* at 167-68, n. 3. The amendment also came just "days before the commencement of trial." *Id.* at 168. Nevertheless, the Court granted the plaintiff's motion to amend because the amendment "did not change the substance of the case, did not require additional discovery, and did not prejudice" the defendant. *Id.*

The same is true of Plaintiffs' amendment here. Prior to this Court's June 10, 2022, Memorandum Opinion, Plaintiffs relied on the Virginia Supreme Court's decision in *Hardick II*, which held that Plaintiffs' damages were limited by the Jones Act, so Plaintiffs could only recover survival damages in a maritime survival cause of action. However, this Court's June 10, 2022, Memorandum Opinion now makes clear that because Plaintiffs are not suing Mr. Laughlin's employer, the United States Navy, under the Jones Act, Mr. Laughlin is a "nonseafarer" that is entitled to recover damages under Virginia's wrongful death statute, consistent with *Calhoun. See Mullinex*, 2022 WL 2110693, at 5 ("[p]laintiff could have pursued a wrongful death claim against Defendant under Virginia law") (citing *Calhoun*, 516 U.S. at 201 (holding that state remedies have not been displaced by the recognized federal maritime wrongful-death action)).

Further, allowing Plaintiffs to recover damages under Virginia's wrongful death statute will not prejudice JCI in any way. First, maritime substantive law will still govern this case, so

none of the standards of liability will change. *See Calhoun*, 216 F.3d at 351. The only real difference here is that if a jury finds JCI liable to Plaintiffs for maritime negligence or strict liability, then the jury will award damages under Virginia's wrongful death statute, consistent with *Calhoun*. No new discovery is required in this case because the parties have already deposed Mr. Laughlin's statutory beneficiaries, his wife and children. Indeed, this is true regardless of which state's law supplements Plaintiffs' damages in this case. For example, Mr. Laughlin's wife and his children are his statutory beneficiaries under Virginia's wrongful death statute. *See* Va. Code Ann. § 8.01-53. Mr. Laughlin's wife and children are also his beneficiaries under Ohio law. *See* Ohio Rev. Code Ann. § 2125.02.[6] Finally, Mr. Laughlin's wife and children are also his beneficiaries under Illinois law.[7] Finally, to the extent that JCI wants to call any of Mr. Laughlin's statutory beneficiaries at trial, it remains free to do so because Plaintiffs' motion comes well before the parties' Rule 26(a)(3) disclosures or the final pretrial order are due in this case.

---

[6]Ohio law allows for a "surviving spouse, the children, and the parents of the decedent" and "other next of kin of the decedent" to recover under the state's wrongful death statute. Ohio Rev. Code Ann. § 2125.02. Accordingly, "under the statute, the surviving spouse, parents or children <u>may</u> maintain an action for wrongful death" and "other next of kin <u>may</u> [also] maintain an action despite the existence of survivors who maintain a closer relationship to the decedent." *See In re Estate of Payne* (2005), 2005 WL 1155891, 2005-Ohio-2391, at ¶¶ 6-7 (emphasis added). However, "other next of kin are not rebuttably presumed to have suffered damages by reason of wrongful death. . . . Rather next of kin must prove their damages." *Id.* at ¶¶ 6-8. In this case, the only people seeking to recover for Mr. Laughlin's wrongful death are Plaintiff, Mrs. Laughlin, and Mr. Laughlin's daughters. Thus, JCI cannot be prejudiced by this because the parties have already deposed everyone seeking to recover damages in connection with Mr. Laughlin's death.

[7] Illinois law allows for a recovery by "the surviving spouse and next of kin of such deceased person." *See* 740 Ill. Comp. Stat. 180/2. In Illinois, proceeds from a successful wrongful death suit are distributed in accordance with Illinois's intestacy laws. *See In re Estate of Finley*, 601 N.E.2d 699, 701 (Ill. 1992). Accordingly, Mr. Laughlin's wife and children would be the only beneficiaries under Illinois's wrongful death statute. *See* 755 Ill. Comp. Stat. 5/2-1 (a) (stating the distribution should be as follows: "[i]f there is a surviving spouse and also a descendant of the decedent: ½ of the entire estate to the surviving spouse and ½ to the decedent's descendants per stirpes").

In sum, "delay alone is not a sufficient reason to deny leave to amend. The delay must be accompanied by prejudice, bad faith, or futility." *Johnson*, 785 F.2d at 509-10. JCI cannot show bad faith, prejudice of futility, so this Court should grant *Plaintiffs' Motion for Leave to File a Second Amended Complaint to Conform to the Evidence and Procedural Posture of this Case*.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Court grant *Plaintiffs' Motion for Leave to File a Second Amended Complaint to Conform to the Evidence and Procedural Posture of this Case* and grant such other and further relief as this Court deems just and proper. Plaintiffs' second amended complaint is attached hereto as **Ex. 1**, and Plaintiffs request that it be deemed filed as of this date.

Respectfully Submitted,

By: /s/ Hugh B. McCormick, III, Esq.
      Of Counsel

| | |
|---|---|
| Robert R. Hatten, Esq. (VSB # 12854) | Nathan D. Finch, Esq. (VSB #34290) |
| Hugh B. McCormick, III, Esq. (VSB # 37513) | MOTLEY RICE LLP |
| Daniel R. O. Long, Esq. (VSB # 95873) | 401 9th Street, NW, Suite 630 |
| PATTEN, WORNOM, HATTEN & | Washington DC, 20004 |
| DIAMONSTEIN, L.C. | Phone: (202) 232-5504 |
| 12350 Jefferson Avenue - Suite 300 | Fax: (202) 232-5513 |
| Newport News, VA 23602 | Email: nfinch@motleyrice.com |
| (757) 223-4500 Telephone | Counsel for Plaintiffs |
| (757) 249-3242 Facsimile | |
| pleadings@pwhd.com | |
| hughmccormick@pwhd.com | |
| Counsel for Plaintiffs | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July, 2022, a true and accurate copy of the foregoing was filed electronically with the United States District Court for the Eastern District of Virginia using the CM/ECF system, which automatically sends all necessary notifications of this filing to the following:

Eric G. Reeves, Esq.
Laura May Hooe, Esq.
Mary Lou Roberts, Esq.
Lisa Moran McMurdo, Esq.
**MORAN, REEVES & CONN, P.C.**
1211 East Cary Street
Richmond, VA 23219
Counsel for John Crane, Inc.

Brian James Schneider, Esq.
**SPOTTS FAIN, PC**
411 E. Franklin St., Suite 600
Richmond, VA 23219
Counsel for John Crane, Inc.

Christopher O. Massenburg, Esq. (admitted *pro hac vice*)
**MANNING GROSS & MASSENBURG, LLP**
365 Canal Street, Suite 3000
New Orleans, LA 70130
Counsel for John Crane, Inc.

By: ___/s/ Hugh B. McCormick, III, Esq.___
Attorney for Plaintiffs

Robert R. Hatten, Esq. (VSB # 12854)
Hugh B. McCormick, III, Esq. (VSB # 37513)
Daniel R. O. Long, Esq. (VSB # 95873)
PATTEN, WORNOM, HATTEN &
DIAMONSTEIN, L.C.
12350 Jefferson Avenue – Suite 300
Newport News, VA 23602
(757) 223-4500 Telephone
(757) 249-3242 Facsimile
pleadings@pwhd.com
hughmccormick@pwhd.com
Counsel for Plaintiffs

Nathan D. Finch, Esq. (VSB #34290)
MOTLEY RICE LLP
401 9th Street, NW, Suite 630
Washington DC, 20004
Phone: (202) 232-5504
Fax: (202) 232-5513
Email: nfinch@motleyrice.com
Counsel for Plaintiffs